# American Freehold Land Mortgage Co. *v.* Sewell.

*Bill in Equity by Mortgagee, as Purchaser under Power, to compel Election by Mortgagor to Ratify or Disaffirm Sale.*

1. *Sale under power in mortgage; purchase by mortgagee.*—A sale of lands under a power contained in a mortgage, in strict compliance with its terms, is a valid and effectual foreclosure, in the absence of fraud or undue advantage, cutting off the equity of redemption as fully as a decree of foreclosure; but, if the mortgagee becomes the purchaser at his own sale, not being authorized by the terms of the mortgage, the mortgagor has a right of election, to be exercised within a reasonable time, either to ratify or to disaffirm the sale.

2. *Same; election to ratify or disaffirm sale.*—The mortgagee, having become the purchaser at his own sale without authority, may file a bill in equity to compel the mortgagor to elect whether he will ratify or disaffirm the sale; and if the latter elects to disaffirm, he must

[American Freehold Land Mortgage Co. v. Sewell.]

offer to do equity by paying the mortgage debt with legal interest; but, if he has sold and conveyed his interest in the land since the sale, his right of election is gone, and neither he nor his assignee can claim it.

3. *Validity of contract; by what law determined.*—Notes being given for money borrowed from a foreign corporation, secured by a mortgage on lands in Alabama, containing a provision in these words, "It is further agreed between the parties hereto that the notes herein described and this mortgage shall be governed and construed by and under the laws of the State of Alabama where the same is made;" and the evidence showing that the writings were signed in Alabama, and here delivered to the corporation's agent, who then delivered to the borrower a check for the money; the validity of the contract is to be determined by the laws of Alabama, although the notes are made payable in New York.

4. *Interest; by what law regulated.*—In contracting for a loan of money, if the contract is valid at the place where it is made, the parties may stipulate for the payment of interest according to the law of that place, or according to the law of the place where payment is to be made.

5. *Allegations and proof.*—The allegations of a bill and the proof must correspond, and both must be sufficient; neither proof without appropriate allegations, nor allegations without corresponding proof, will entitle a party to relief.

6. *Inconsistent pleadings, not objected to.*—Where the original bill, filed by a foreign corporation, sought to enforce the right under a mortgage given for a loan of money, alleging that the contract was made in Alabama; and the defendant, by answer and cross-bill, admitting that the contract was made in Alabama, averred a failure on the part of the corporation to comply with the constitutional and statutory provisions imposing restrictions on foreign corporations doing business in Alabama; and an amendment of the bill was then filed, alleging that the contract was made in New York, but not striking out the former averment that it was made in Alabama; which amendment the defendant answered without objection, admitting that the contract was made in New York, and insisting that it was void for usury under the laws of New York; held, that the complainant was entitled to relief, the evidence showing that the contract was made in Alabama, and that the corporation had complied with constitutional and statutory provisions.

7. *Usury.*—A loan of money at legal interest, secured by note and mortgage, is not rendered usurious because a commission was paid to the agent negotiating the loan, when it is not shown that the lender had knowledge of the fact, or participated in the commission paid.

APPEAL from Chancery Court of Elmore County.

Heard before the Hon. S. K. McSPADDEN.

The facts in this case are sufficiently stated in the opinion. On the final submission, on the pleadings and proof, the Chancellor decreed that the complainant was not entitled to the relief prayed; and dismissed its bill; and this decree is now appealed from, and assigned here as error.

WEBB & TILLMAN, and C. BRADSHAW, for appellant.—1. The expression, "No foreign corporation shall do any business in this State, without having at least one known place of busi-

ness," does not include appellant's loan of money to Sewell.— *Christian v. American Freehold Co.*, 89 Ala. 198; 2 Morawetz on Corp., § 662; *Equitable Life Assur. Soc. v. Vogel's Ex.*, 76 Ala. 441; *Beard v. Union & Amer. Pub. Co.*, 71 Ala. 60; *People v. Com. of Taxes*, 23 N. Y. 242; *Colorado Cooper Mfg. Co. v. Ferguson*, 18 Am. & Eng. Corp. Cases, 178; *Doty v. Mich. Cent. R. Co.*, 8 Abb. Pr. (N. Y.) 427; *State v. Smith et al.*, 8 Sou. Rep. (Miss.) 294; *Jahier v. Rasco*, 62 Miss. 699; *United States v. Amer. Bell Tel. Co.*, 29 Fed. Rep. 17, op. 38; *People v. Amer. Bell Tel. Co.*, 27 Amer. & Eng. Corp. Cases, 616, Note.

2. Appellant, a foreign corporation, had complied with the requirements of Section 4 of Article 14 of the Constitution. (*a*). The meaning of the constitutional provision is to be determined by the rules laid down in Endich on Inter. of Statutes, §§ 500, 517, 518; Potter's Dwarris on Statutes, 654. (*b*). Sale and purchase by the mortgagee is a valid foreclosure until set aside.—*Craddock v. Am. Freehold Land Mort. Co.*, 88 Ala. 281; *Alexander v. Hill*, 88 Ala. 488; *Ezzell v. Watson*, 83 Ala. 122; *Harris v. Miller*, 71 Ala. 26. (*c*). That the mortgage was an executed contract after foreclosure sale.—*Craddock v. Am. Freehold Land Mort. Co.*, 88 Ala. 283. (*d*). Until set aside, statutory right of redemption a mere personal right.—*Powers v. Andrews*, 84 Ala. 289; *Commercial Bank v. Parker*, 84 Ala. 298. (*e*). After the sale by Sewell to Whetstone, which was before he filed his answer, he lost all right of election to set aside the foreclosure sale.

3. Conflict of Laws. On the question whether or not the contract of a loan as to usury *vel non* is to be governed by the laws of New York or the laws of Alabama. (*a*). Usury largely a question of intention.—*Uhlfelder v. Carter*, 64 Ala. 527; *Call v. Palmer*, 116 U. S. 101; *Arnold v. Potter*, 22 Iowa 200; *Eslava v. Crampton*, 61 Ala. 507; *Barr v. Collins*, 64 Ala. 41; *Dozier v. Mitchell*, 65 Ala. 511. (*b*). The laws of Alabama, not those of New York, on the subject of usury, govern the case. Wharton Conflict of Laws, 2 ed., §§ 505, 505a, 507, 508, 510; Rorer on Interstate Law, p. 48; 1 Randolph on Com. Paper, §§ 43, 45; 1 Daniel's Negotiable Inst., § 894; *Connell v. Earl of Belmont*, 2 Atkyns' Rep. 382; *Chapman v. Robertson*, 6 Paige, 627; *Arnold v. Potter*, 22 Iowa, 194, op. 200; *Dugan et al. v. Lewis*, 14 S. W. Rep. 1024; *Scott v. Perlee*, 39 Ohio St. 63; *Kellogg v. Miller*, 2 McCrary's Reports, 395, s. c. 13 Fed. Rep. 198; *Pancoast v. Travelers' Ins. Co.*, 79 Ind. 178; *Townsend v. Riley*, 46 H. H. 310; *Fisher v. Otis*, 3 Chandler (Wis.) 78; *Bolton v. Street*,

[American Freehold Land Mortgage Co. v. Sewell.]

3 Caldwell's Tenn. Rep. 31; *Kilgore v. Dempsey*, 25 Ohio St. 413.

4. Appellant actively seeking relief must offer to do equity. 1 Pomeroy's Eq. Jur., §§ 391, 937; *Tongue v. Nutwell*, 31 Md. 302; *Uhlfelder v. Carter*, 64 Ala. 527, op. 532; *Eslava v. Elmore*, 50 Ala. 587; *Rogers v. Torbut*, 58 Ala. 525; *Hudnit v. Nash*, 16 N. J. Eq. 553; *Giveans v. McMurtry*, 16 N. J. Eq. 468, op. 473; *Conover v. Van Mater*, 18 N. J. Eq. op. 487; *Vanderveer v. Holcomb*, 17 N. J. Eq. 87. (*a*). The principles of the foregoing cases apply equally as well when the statute of usury declares a forfeiture of the principal amount loaned as when only the interest. 1 Story's Eq. Jur., § 301; *Williams v. Fitzhugh*, 37 N. Y. 444; *Mason v. Gardner*, 2 Brock. Ch. Rep. 222; *Fulton v. Beach*, 1 Paige, 433.

SEMPLE & GUNTER, *contra.*—1. The *venue* of a contract is where it is made.—*Scudder v. Union et al. Bank*, 91 U. S. 406; 1 Jones on Mortgages, § 656, *et seq.* 2. The *venue* of performance is the place of performance. *Ib.* The place of making a contract is where it first becomes a binding engagement.—*Hanrick v. Andrews*, 9 Port. 34; 3 Amer. & Eng. Ency of Law, 547. 3. The performance of a contract of loan is repayment, and where that is to be made is the place of performance, irrespective of the *situs* of the things pledged as security for performance.—*De Wolf v. Johnson*, 10 Wheat. 383. 4. Laws arise only from the legislative will, and can not be repealed as to persons or subjects within their jurisdiction otherwise than by the law making power. Hence on a question of legality of contract, the enquiry is only for the *venue* of the engagement, and not the intention of the parties as to what law should govern. A contract void where made is void everywhere.—*Andrews v. Pond*, 13 Pet. 78; *Hitchcock v. U. S. Bank*, 7 Ala. 431.

5. The legality of the contract must be governed by the place where it is made. The contract in this case was made in New York, and being utterly void there, is void everywhere. —*Andrews v. Pond*, 13 Pet. 78; *Hitchcock v. Bank U. S.*, 7 Ala. 431; *Cubbedge v. Napier*, 62 Ala. 522; *Harnick v. Andrews*, 9 Port. 31-2; *Evans v. Kittrell*, 33 Ala. 452; *Moore v. Davidson*, 18 Ala. 213; *Jones v. Jones*, 18 Ala. 248; *De Wolf v. Johnson*, 10 Wheat. 383; *Scudder v. Union Nat. Bank*, 91 U. S. 406; *Pritchard v. Norton*, 106 U. S. 124; *Miller v. Tiffany*, 1 Wall. 298; *Hunt v. Hall*, 37 Ala. 702; 2 Kent. Com. 460; Story's Conf. of Laws, §§ 242-3-280; 3 Am. and Eng. Ency of Law, 542-50, and the numerous authorities

[American Freehold Land Mortgage Co. v. Sewell.]

cited in the notes; 1 Jones on Mortgages, §§ 656, 657,-8-9, 660; Notes to *Morris v. Hockaway*, 55 Am. Rep. 609.

6. It cannot be insisted that as the mortgaged lands are situated in Alabama, the laws of Alabama govern the transaction.—1 Jones on Mortgages, §§ 660-661; *De Wolf v. Johnson*, 10 Wheat. 367; 3. Am. and Eng. Ency. of Law, 546.; *Dickerson v. Edwards*, 77 N. Y. p. 586; *Curtis v. Leavitt*, 15 N. Y. 88, 228; Story on Conf. of Laws, §293c.

COLEMAN, J.—The Corbin Banking Company doing business as bankers in New York City, negotiated a loan between the plaintiff, a corporation under the laws of England, and William B. Sewell, the defendant, a resident citizen of Alabama. The loan was secured by a mortgage on the lands in Elmore county, Alabama.

Under a power of sale included in the mortgage, the land was sold, and plaintiff the mortgagee, became the purchaser.

By the laws of this State, a foreclosure of a mortgage in accordance with its provisions, is a valid, legal foreclosure, and there being no fraud or undue advantage, is absolute and final against all persons, except against the mortgagor or his privies, although the mortgagee himself is the purchaser at his own sale.

A mortgagor (or his privies or assignees who have become such before a foreclosure) has the privilege, if seasonably expressed, to disaffirm and avoid the sale and foreclosure, when the mortgagee becomes the purchaser, no such authority having been granted in the mortgage. The mortgagee, also may by bill in chancery compel the mortgagor to elect whether he will ratify or disaffirm the sale; and if the sale is disaffirmed, the bill being framed for that purpose upon sufficient proof, the court will decree a foreclosure.

Acting under these principles, the plaintiff, having purchased the mortgaged lands at a sale made in pursuance of the terms of the mortgage, filed the present bill, in which the defendant is required to elect, whether he will ratify or disaffirm, and, in the event he disaffirms the sale, the court is prayed for a decree of foreclosure.

The mortgage and notes are headed at Elmore county, Alabama, and purport to have been dated and signed there. By the averments of the bill, the mortgage is made a part of the bill. It has this provision in it: "It is further agreed between the parties hereto, that the notes herein described and this mortgage shall be governed and construed by and under the laws of the State of Alabama where the same is made."

The note bearing 8 per cent. interest on its face, and interest

coupons, are made payable at the office of the Corbin Banking Co., New York City.

The defendant Wm. B. Sewell answered the bill and elected to disaffirm the sale. In his answer he states *"that the said transaction was made in the State of Alabama on the 5th day of March, 1887, or about that time,"* and this admission is followed with the statement that Gaddis was the agent of the complainant, and acting in its behalf in doing business in this State, and that plaintiff had not complied with the Constitution and laws of the State, prohibiting the doing of business by a foreign corporation in the State without having a known place of business and an authorized agent; and further averring there was usury in the transaction, and asked that the answer be taken as a cross-bill, and prayed for affirmative relief. In answer to the cross-bill, the plaintiff denied that the transaction was made in Alabama, but averred that the contract loan was effected wholly in New York; and for further answer to the cross-bill, the plaintiff averred that defendant, Sewell, after the filing of the original bill and before filing his answer and cross-bill, had sold by release and quit-claim all his interest in the land to one William H. Whetstone. A copy of the conveyance to Whetstone, with the certificate of acknowledgement, is made an exhibit to the answer to the cross-bill.

Plaintiffs then amended their original bill *by adding* thereto, an averment that the contract loan was made wholly in New York City, and not in Alabama. To the bill as amended the respondent answered, admitting, the averment of the amendment, to be correct; and by way of answer and plea, set up the New York statute, which prohibits a greater rate of interest than six per cent., and which declares all contracts in which usurious interest is charged to be null and void. The pleadings have been stated at length, in order that we may be the better understood in considering the several questions of law discussed, and insisted upon in argument. The chancellor dismissed plaintiff's bill, and defendant's cross-bill, holding that the contract was governed by the laws of New York, and was null and void.

The foreclosure of the mortgage by sale under power given in the mortgage cuts off the equity of redemption, as fully as a foreclosure by a decree by the court. The mortgagor in such a case may come into a court of equity, and in this court alone, and have the sale set aside, and thus become re-invested with the equity of redemption. But to obtain this relief, he must offer to do equity.— *Garland v. Watson,* 74 Ala. 324; *Harris v. Miller,* 71 Ala. 32; *Craddock v. Amer. Freehold*

*Co.*, 88 Ala. 281; *Alexander v. Hill, Ib.* 487; *Ezzell v. Watson,* 83 Ala. 120; *Knox v. Armistead,* 87 Ala. 511.

The purchaser of the equity of redemption succeeds to all the rights of the mortgagor. The court does not set aside the sale on the ground, that the equity of redemption still exists in the mortgagor, but on the theory that the mortgagee stands in the relation of a trustee who has obtained an advantage over his *cestui que trust,* and out of great caution a court of equity permits the *cestui que trust* to elect within a reasonable time whether he will disaffirm the sale.—*Thomas v. Jones,* 84 Ala. 304. After the foreclosure there is no property right in the mortgagor, nothing that can be levied on or sold or assigned. We do not now refer to the statutory right of redemption, amended by the acts of 1888–9, p. 764, but to the redemption rights of the mortgagor growing out of the transaction under consideration. He has the option to ratify or disaffirm, and no one who was not the owner of the equity of redemption or his privies at the time of the foreclosure by sale, and who has not in some way estopped himself, can assert this election. The only purpose and effect of a decree setting aside the sale, is to restore him the equity of redemption, and this will be done only upon his doing equity. If, therefore, after the foreclosure of the mortgage, the mortgagor, sells and conveys the lands, to a third person, he is not in a position to ask the court to grant this relief, or to exercise any election in the matter. *McCall v. Mash,* 89 Ala. 487. If the bill had been amended, under Chancery Rule 48, and averred that after the filing of the bill and before the respondent filed his answer and cross-bill, the respondent had sold and conveyed the lands to Wm. H. Whetstone, and the averments had been sustained by proof, we would hold that defendant was estopped from asserting the right of election, and complainant would have been entitled to a decree confirming the foreclosure; or, complainant might have dismissed his bill without prejudice, and the mortgage being valid and fully executed, could have successfully maintained a suit in ejectment for the recovery of the land, without interference by a court of equity at the suit of the mortgagor.

An answer is intended merely to bring forward a defense to the bill or cross-bill as the case may be; and the only relief granted upon a mere answer, is that the defendant be dismissed. If proof had been offered to sustain this ground of defense, which we do not find in the record, not having been charged in the bill, no affirmative relief on this ground could be granted, for the want of proper averment.

It has been settled by numerous decisions that he who comes into a court of equity for relief must do equity; and this rule

has been strictly applied in all cases where the complainant has applied to be relieved from a charge of usurious interest. The same rule is applied to a respondent who seeks affirmative relief by a cross-bill. When the respondent prayed in his cross-bill for the cancellation of the contract, failing to offer to do equity, by offering to pay the principal and legal interest, his cross-bill was without equity, and should have been dismissed.—*Fulton Bank v. Beach*, 1 Paige, Ch. Rep. 429; 1 Pom. Eq., § 391; 15 Ala. 51; *Hudnit v. Nash*, 16 N. J. Eq. 553; *Vandeveer v. Holcombe*, 17 N. J. Eq. 87; *Elova v. Elmore*, 50 Ala. 587; *Rogers v. Torbut*, 58 Ala. 525.

The important qestion is to determine what law governs the contract; and to do this, the first inquiry is to ascertain the place of the contract.

The facts in the case of *Farrior v. New England Mortgage Security Company*, 88 Ala. 277, were almost identical with those in the present case. In the second paragraph of the opinion, this court said : "The bill shows on its face with sufficient certainty that the notes and mortgage were presumptively executed and delivered in this State. They all bear date April 13th, 1886, the notes and mortgage alike being dated in Alabama. There is contained, moreover, in the body of the mortgage, this declaration : It is further agreed between the parties hereto, that the notes herein described, and this mortgage shall be governed and construed by and under the laws of the State of Alabama, where the same is made. The word *made*, as here used obviously meaning executed, and the latter word involves the act of delivery. The acknowledgment moreover taken before the notary, imports in express words that the grantor executed the mortgage on the day it bore date. . . . It was immaterial, therefore, that the notes were made payable in New York. The loan of the money and the taking of the security by mortgage, were *prima facie* executed in Alabama."

The averments of the original bill in this suit are substantially the same. Does the proof sustain these allegations, or does it support the amendment to the bill, which alleges the transaction to have been executed in New York? There can be no doubt that the evidence fixes Alabama as the *locus contractus*. The presumption arising from the written instruments is fully sustained by the facts testified to by Gaddis, none of which are disputed in any way by the testimony of any other witness. The application for the loan was made in Alabama, the money was paid to the borrower in Alabama, upon the execution of the notes and mortgage which was done

in Alabama, and at the time of their execution and in consideration thereof.

Prior to that time, all that had been done was merely preliminary. Some of these preliminary acts, such as making out the application had been performed in Alabama; others, such as the payment of the money by the loan company to the Corbin Banking Company, was done in New York. The Corbin Banking Company did not receive the money from the lender or hold it when received, as the agent of the borrower. As yet, the borrower had no claim upon it, and the Corbin Co. was not responsible to the borrower for its use. The check sent out to Alabama was payable to Gaddis, not to Sewell, the borrower. It was to be paid over to the borrower after he had executed the contract by giving a note and mortgage, upon the property designated in the application, and which were situated in Alabama; but until this was done, there was no contract for the loan to Sewell, which Sewell could enforce against any one. The negotiation ended in a contract when the note and mortgage were executed by Sewell and the money paid to him. The proof shows that the note and mortgage were not made and sent to New York for delivery before the payment of the money, but the contrary is true. The money was sent out to Alabama, before the execution of the notes and mortgage, and then and there paid over, upon their execution. Until then the money was not subject to his order.

Gaddis further testifies that by previous arrangement with the Corbin Banking Company, he was paid in cash by the company for his services in procuring the loan, three per cent. on the amount loaned. He further says: "I received the mortgage and notes from said Sewell at the instance of the Corbin Banking Company of New York, and sent them to the Corbin Banking Company in New York." "I had the mortgage recorded, after it was delivered to me."

Having arrived at the conclusion that the contract was made in Alabama, the stipulation to pay eight per cent. interest was in accordance with the *lex loci contractus.* If a valid contract where made, it is, as a general rule, valid everywhere. Under a valid contract, parties may agree for the payment of such rates of interest as may be allowed by the law of the place of making, or performance of the contract. This proposition is conceded.—*Depeau v. Humphries,* 8 Martin's Rep. 27; *Andrews v. Pond,* 13 Pet. 78; 2 Kent, § 460; *Hanrick v. Andrews,* 9 Por. 30; *Cromwell v. Sen,* 96 U. S. 602; *Hitchcock v. United States Bank,* 7 Ala. 433.

Proof without allegation, or allegation without proof, does not authorize relief. The *allegata* and *probata* must corres-

pond, and both be sufficient. Are the pleadings in condition to entitle plaintiff to the benefit of the conclusion reached from the evidence, as to the *locus contractus?* We have stated them as they appear in the record. The original bill averred that the contract was made in Alabama. By adding an amendment, it was averred that the contract was made in New York. The first averment was not stricken out. Both averments are in the bill, inconsistent and repugnant to each other because of the legal effect upon the contract, if the one or the other averment was true. The answer is in the same condition. The original answer to the original bill admitted and averred that the contract was made in Alabama, and the defense was usury, under the law of Alabama, and also that the contract was void, upon the ground that complainant had " no known place of business or authorized agent, as required by the Constitution and laws of Alabama." To avoid the effect of this defense, undoubtedly, the bill was amended, so as to aver the contract was made in New York. To meet the force of the amendment made to the bill, respondent, both by answer to the amendment, and plea, admitted and set up that the contract was made in New York, and pleaded the New York statute, which declares contracts for a higher rate of interest than six per cent to be null and void. The original answer remains as first drawn, admitting and averring that the contract was made in Alabama. No objection was taken by either party for inconsistency in the pleadings. We know the distinguished counsel representing the parties to this cause, did not overlook, or fail to appreciate, the condition of the pleadings. They were left in this condition, no doubt, intentionally. At the time the pleadings were framed, and when the cause was submitted for decree in the chancery court, no adjudication had been made by this court construing the constitutional and statutory provisions, which prohibited the doing of any business in this State by a foreign corporation without having " a known place of business and an authorized agent " in this State. Previous decisions of this court had declared the constitutional provision self-executing, and learned counsel did not know and could not tell what was necessary to be done in order to comply with the constitutional requirement. Plaintiffs evidently were preparing to meet whatever construction the court might place upon the law in regard to foreign corporations, and respondent's object apparently was to force plaintiff to shipwreck in either aspect; and for this purpose admitted that the contract was made in Alabama, or in New York, as plaintiff might aver. If the proof showed that it was an Alabama contract, then respond-

ents, for a defense, pleaded a non-compliance with the Alabama laws; if the proof showed that it was a New York contract, then defendants would insist that the contract was void under the New York statute. Whether correct or not as to the purpose of counsel, the pleadings are as stated, and the rights of the parties under them as they are, must be adjudicated.

An amendment to a bill is a mere continuation, and the whole is but one bill. In the case of *Lockett v. Hurt*, 57 Ala. 200, the bill was filed in a double aspect, first asserting a right to redeem lands under a sheriff's sale, and, second, asserting the invalidity of the sheriff's sale. This court held that the plaintiff was entitled to relief. In the case of *Ray v. Womble*, 56 Ala. 36, referring to the case of *Lockett v. Hurt, supra*, it was held that the inconsistency of the bill in the latter was not inquired into, because, the assignments of demurrer did not embrace the cause of repugnancy in the bill.

We hold that the failure of the defendant to demur to plaintiff's bill, or otherwise object to it, on account of inconsistent or repugnant allegations, was a waiver of the defect; and if the proof shows that plaintiff was entitled to relief under either aspect of his case, the court below erred in not granting relief. Our conclusion has been that the *locus contractus* was. Alabama, and that consequently the New York statute was no defense. We are further confirmed in our conclusion that plaintiff is entitled to relief by the leading authorities relied on by both appellant and appellee to sustain their respective contestations.

The facts in the case of *Chapman v. Robertson*, 6 Paige, 627, were, that Robertson, a citizen of New York, being in England, applied to Chapman for a loan of 800 pounds sterling, to be secured by bond and mortgage on lands in New York. It was agreed that Robertson should return to New York, and execute his bond and mortgage, and have the same recorded, and transmit it to complainant in England; and upon receipt of the security, the 800 pounds were to be deposited in London with Robertson's bankers, for his use. On a bill filed in New York, the same defense was made as in the present case, viz., that the contract was made in England, and the money payable in England and being in violation of the usury laws of England, the contract was void. The court held that, the security being upon land situated in New York, the place of the domicil of the mortgagor, although the money was payable in England, the contract was governed by the laws of New York, and the plaintiff was granted relief. The conclusion of this decision has been followed in other courts, and adopted as a sound construction of the law applicable in

such cases.—*Dugan v. Lewis*, 14 So. W. Rep. 1024, from Texas; *New Eng. Morty. Sec. Co. v. McLaughlin*, in MSS. from Supreme Court of Ga., Oct. Term, 1890; Boone's Law of Mortgages, § 86; 7th Ala., *supra*.

We are aware that the soundness of the reasoning in the decision in 6 Paige, *supra*, has been questioned; and Jones, in his work on Mortgages, vol. 1, §§ 660-1, says it has been overruled. Most of the authorities which criticize the principle of law laid down, generally concede the correctness of the conclusion of the learned Chancellor, who rendered the decision in the case of *Robertson v. Chapman*. Judge Story, in his criticism, § 293c, referring to the case of *Chapman v. Robertson*, says : "the decision itself seems well supported in point of principle; for the parties intended that the whole transaction should be in fact, as it was in form, a New York contract, governed by the laws thereof, *and the repayment of the debt was there to be made*." The italics are ours. There are no facts in the case, except those which arise from the making of the note and mortgage in New York, which authorize the assumption that the money was to be repaid in New York. The chancellor and Judge Story differ as to the place of payment. The latter holding it to be a New York contract, and consequently the place of payment presumptively was in New York; the former holding that, as no place of payment was fixed, the law fixed it in England; but further held, that although, as a mere personal contract, it would be wholly inoperative until it was received by the lender in England, where the money was then to be deposited with the borrower's banker for his use, yet, on account of the character of the property, being real or heritable property, and the further fact, that the mortgage was executed in New York, upon property in that State, being valid by the *lex situs*, which was also the law of the domicil of the mortgagor, it was the duty of the court to give full effect to the security, without reference to the usury laws of England, which neither party intended to evade by the execution of the mortgage upon the lands in New York.

It is insisted by appellants, that the rule declared in *Chapman v. Robertson*, is fully sustained by principle and authority, and applies in the present case; and on the other hand, it is insisted by appellee, that *Chapman v. Robertson*, is not based upon sound principles of law, has been overruled, and that Story's criticisms are well founded. We have cited both authorities because both sustain our conclusion, so far as granting relief to plaintiff.

In the case of *Hitchcock v. United States Bank*, *supra*, the

court referring to the case of *Chapman v. Robertson*, 6 Paige, held that the facts of the case were sufficient to fix New York as the *locus contractus*. It says, "There the facts were sub-stantially the same as in the preceding case, with the additional fact (which also exists in this case) that a mortgage was executed by a debtor on lands lying in New York, the place where the contract was made, though to be performed in England." The court further held, that "the cases cited from 8 Martin (*Depau v. Humphries, supra,*) and 6 Paige are identical with this, and in *our opinion determine the law correctly.*" The italics are ours.

If the principles declared in the case of *Chapman v. Robertson* are correct, it is the duty of this court to hold the security valid without reference to the usury laws of New York. On the other hand, if the facts of the case in *Chapman v. Robertson* are sufficient to fix the *locus contractus* in New York, as held by Story, and by this court in 7 Ala., *supra*, then the facts of the case under consideration, as we have shown, are much more potent to fix the *locus contractus* in Alabama, and this being established, it is conceded the parties could contract for either rate of interest, without regard to the usury laws of the place of payment.

The case before us does not require an adjudication of the question, whether, when the *locus contractus* and *locus solutionis* is wholly in the same State, and where usurious con-tracts are declared void by statute, and the debt is secured by a mortgage upon property in another State, where a higher rate of interest is legal, the parties may legally contract for the higher rate. Anything we might say on this subject would be regarded as mere *dictum*, inasmuch as we hold the present contract to have been made in Alabama; and in this respect the conclusion of this court differs from that reached in the case of *Dugan v. Lewis.*

The case of *Dugan v. Lewis*, 14 S. W. Rep., *supra*, was very similar to the case under consideration, and if the facts had been detailed literally, probably the two would be identical in all respects. The Texas case regarded New York as the *locus contractus* and *locus solutionis*, and followed *Chapman v. Robertson, supra*, citing other authorities sustaining it. Judge Henry, by whom the opinion in the Texas case was rendered, brings forward 'as an additional argument, this proposition, founded upon the doctrine that the contracting parties have the right to stipulate for the rate of interest legal at either of the two *loci*. He says there is no reason why their making their contract in one State instead of the other, nor why their making it payable in one instead of in the other, should have

a controlling influence over the question.　Doing either will, in the absence of other evidence, serve to show their purpose, and control the result.　But not so when they otherwise distinctly provide, or when from other facts their intention can be more satisfactorily ascertained.

The general rule is, the validity of a contract is determined by the place of the contract, and the intention of the parties is only looked to in construing the contract, or, as forcibly put in the brief of counsel, the "*venue* of the agreement determines its validity, and not the *venue* of the intention."—*Cubbedge v. Napier*, 62 Ala. 522.

The necessities of trade, commerce and progress may demand that the principle of *mutatis mutandis* be expanded, and applied to other things "than names, offices, and the like."

The evidence fails to establish that the plaintiff charged any higher rate of interest than eight per cent.　There is no evidence tending to show that plaintiff knew of, was connected with, or in any manner interested in the commisions paid or agreed to be paid to Gaddis, or the Corbin Banking Company, to procure the loan.—*Ginn v. New Eng. Mortg. Sec. Co., supra*, 8 So. Rep. 388; *Call v. Palmer*, 116 U. S. 10.

Under the recent decisions of *Nelms v. New Eng. Mortg. Sec. Co.*, (*supra*), and *New Eng. Mortg. Sec. Co. v. Ingram*, 91 Ala. 337, the averments and proof show a compliance with the law which requires that foreign corporations shall have a known place of business, and authorized agent.

Reversed and remanded.

WALKER, J., not sitting.