# American Freehold Land Mortgage Co. *v.* Pollard, *et al.*

*Bill in Equity to compel Affirmance or Disaffirmance of Mortgage Sale; Cross-bill to disaffirm and be let in to redeem.*

1. *Chancery practice; effect of reversal of decree of appellate court.*—When a decree of a lower court is, by the appellate court, reversed and annulled, such decree is thereby destroyed for all purposes, and the judgment of reversal in the appellate court leaves the case as if the decree in the lower court had not been rendered, and, opening the case, gives the lower court jurisdiction of all interlocutory orders and decrees.

2. *Same; bill to redeem; amendment of bill.*—Where the mortgagee, who purchased at a mortgage sale without having authority therefor conferred by the mortgage, files a bill to compel the mortgagor to elect to affirm or disaffirm such voidable foreclosure sale, and offers to account for the rent as mortgagee in possession and prays for foreclosure of the mortgage, in the event of an election to disaffirm, the amendment of said bill so as to seemingly ignore such allegations and offer, with the apparent purpose to proceed upon the theory for relief inconsistent with said allegations, but· without striking the same from the file, does not affect the force of such allegations, and they must be considered in the further progress of the suit. If the complainant ·intended the amendment to disaffirm and destroy the force of such allegations, they should have been stricken.

3. *Same; same; time within which election must be made.*—The rule that a party must elect to disaffirm a voidable fore-· closure sale, ordinarily, within a period of two years from

the date of such sale, has no application in tolling the time of election actually taken in response to a bill filed by the purchasing mortgagee, for the purpose of compelling an election to affirm or disaffirm; since no mere lapse of time, after the bill is filed, can destroy the right of the mortgagor who is made respondent to such bill, to elect to affirm or disaffirm.

4.  *Same; same; right of respondent to recede from election made.* Where a bill is filed by a mortgagee who purchases at the mortgage sale, without having authority therefor conferred by the mortgage, to compel the mortgagor to elect to affirm or disaffirm the voidable foreclosure sale, an election by the respondent mortgagor to affirm such sale may be receded from and avoided in the further progress of the suit, when the complainant, by amendment to his bill, changes the terms upon which such election to affirm was made, so that if held to the election, the mortgagor would derive less benefit or incur heavier burdens than were secured by or involved in the affirmance when made. The complainant in such case can not actively induce the respondent to elect to affirm a voidable foreclosure sale, and then change the terms of the proposition and still hold the respondent to the election as first made.

5.  *Same; sufficiency of plea to cross-bill.*—A plea filed to a cross-bill, which averred that after the respondent (the complainant in the cross bill) had elected, in response to the original bill, to affirm a voidable foreclosure sale, complainant had sold the property involved to a third party, is no answer to a cross bill seeking to disaffirm said sale, and is properly overruled.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the American Freehold Land Mortgage Company, against Charles T. Pollard and Rebecca M. Pollard, his wife.

The purpose of the bill and the facts of the case are sufficiently stated in the opinion. The present appeal is prosecuted from a decree rendered on the final submission granting the relief prayed for by Mrs. Rebecca M. Pollard, in her cross-bill.

KNOX & BOWIE and WATTS, TROY & CAFFEY, for appellants.—There are but two main questions presented by this appeal. The first is, within what time can a mortgagor disaffirm a purchase of the mortgaged property by the mortgagee; and, secondly, is an election once properly made to affirm the sale capable of being withdrawn after the mortgagee has acted on said election? The sale made at which complainant purchased was not void, but voidable only, at the election of R. M. Pollard, expressed within a reasonable time. *McGehee v. Lehman*, 65 Ala. 316; *McCarty v. Woodstock*, 92 Ala. 463; *Mason v. A. M. Co.*, 26 So. Rep. 990; *McLean v. Pressley*, 56 Ala. 211; *Adams v. Sayre*, 70 Ala. 318; *Harris v. Miller*, 71 Ala. 26; *Dozier v. Mitchell*, 65 Ala. 511; *Ezzell v. Watson*, 83 Ala. 122; *A. F. L. M. Co. v. Sewell*, 92 Ala. 163; *Lovelace v. Hutchinson*, 106 Ala. 417. This reasonable time has been fixed by this court to be two years from the date of the sale. *Norton v. B. A. Mtg. Co.*, 113 Ala. 110; *Ezzell v. Watson*, 83 Ala. 122; *Comer v. Sheehan*, 74 Ala. 458; *Cooper v. Hornsby*, 71 Ala. 64; *Alexander v. Hill*, 88 Ala. 488. The mortgagor certainly cannot exercise this right after an acquiescence of ten years, especially if the property has become more valuable.—*Welsh v. Coley*, 82 Ala. 366; *Campbell v. Woodstock*, 83 Ala. 351; *Gilmer v. Morris*, 80 Ala. 78. See also *Charles v. DuBose*, 29 Ala. 367; *Cullom v. Robinson*, 41 Ala. 693; *Sloan v. Frothingham*, 65 Ala. 598.

The complainant had the right to come into equity, after the sale, and call upon all parties interested to affirm or disaffirm the sale at which it had become the purchaser. There can be no question of this proposition. It has been many times decided in Alabama. *Am. F. L. M. Co. v. Craddock*, 88 Ala. 281; *Alexander v. Hill*, 88 Ala. 490; *McHan v. Ordway*, 82 Ala. 463; *Am. F. L. M. Co. v. Sewell*, 92 Ala. 163.

The mortgagor can affirm the sale, and in that case, neither he nor any one claiming under him can afterwards disaffirm.—12 Vesey, 355; *White v. Tudor*, L. C. 136, 144. Sales by trustees to themselves will not be set aside if there has been a ratification or affirmance of the sale or acquiescence, or failure to apply to have

it set aside for an unreasonable time.—7 S. & Mar. 419. Election is the right or choice between two or more steps or things by a person not entitled to all. That is, he is not entitled to affirm and disaffirm the sale, but may do either.—6 Enc.. of Law, .p. 247. After his choice is made and by words and acts expressed in a manner suited to the particular case, *he cannot reverse it.* He is said to have *elected* the one step and *waived* the other. Bishop on Contracts, § 808; *Buller v. O'Brien,* 5 Ala. 323; *Mosely v. Wilkinson,* 24 Ala. 417; *Firemen's Ins. Co. v. Cochran,* 24 Ala. 237; *Sheppard v. Buford,* 7 Ala. 94; *Deens v. Dunklin,* 33 Ala. 47. The election once made is irrevocable without the consent of the other party.—*Collins v. Whigham,* 58 Ala. 440; Chitty on Contracts, 1061; *Van Winkle v. Lehman,* 92 Ala. 447; *Van Winkle v. Crowell,* 146 U. S. 53; *Adams v. Adams,* 35 Ala. 605.

JOHN G. WINTER and GEORGE F. MOORE, *contra.*—The complainant is bound by the statements and the prayer of its bill. These admit in the defendant the right to redeem, the right to disaffirm, and admit the present existence of the mortgage. These admissions and statements in the bill cannot be controverted. The right of the complainant to have its title quieted, or to foreclose the mortgage, recognizes the reciprocal right in defendants to disaffirm and redeem. If the mortgagee is a trustee, it cannot set up the statute of limitations or lapse of time, while it recognizes the existence of the trust as it has done in and by its bill, and the several amendments thereto. If the equity of redemption was not cut off by the sale so as to prevent the mortgagor from disaffirming and redeeming, it certainly has not been cut off since the filing of the original bill, because the same right which existed at the time the original bill was filed, is recognized and acted upon by the complainant down to and including the amendment filed March 18, 1899.—2 Jones on Mortgages, §§ 1162-1163; *Morgan v. Morgan,* 10 Ga. 303; *Calkins v. Isbell,* 20 N. Y. 151; *Waldo v. Rice,* 14 Wis. 286; *McCarren v. Coogan,* 50 N. J. Eq. 268; *Chapin v. Wright,* 41 N. J. Eq. 443;

*Thomas v. Jones,* 84 Ala. 304; *A. F. L. M. Co. v. Sewell,* 92 Ala. 163; *Lovelace v. Hutchinson,* 106 Ala. 417; *Norton v. B. A .M. Co.,* 113 Ala. 110; *McHan v. Ordway,* 76 Ala. 347; *Clark v. Robinson,* 15 R. I. 231; *Whitney v. White,* 2 Cox. 289; *Hansard v. Hardy,* 18 Vesey, 459; *Marks v. Pell,* 1 Johnson Chan. 545; *Pendleton v. Rooth,* 1 Clifford, 351.

Under the facts as averred in the bill and the cross bill as shown by the evidence, there had not been an election by the respondent to affirm the mortgage sale, which precluded her from afterwards receding therefrom upon the subsequent amendment of the bill. The right to disaffirm and redeem could not, under the facts of this case, be cut off, except by final decree of the court. There was no such final decree. In truth there was no binding election by Mrs. Pollard, except to disaffirm the sale, and to see a redemption of the mortgage property, and there was no final decree except the one now appealed from.—*Pollard v. A. F. L. M. Co.,* 103 Ala. 289; *Adams v. Adams,* 39 Ala. 605; *Ex parte Ashurst,* 100 Ala. 573; 1 Daniel Chancery Pl. & Prac., § 409; 1 Beach Modern Equity Practice, § 398; *Garrett v. Reeves,* 34 Ala. 558; Pomeroy on Equity Jurisprudence, § 632.

McCLELLAN, C. J.—Adopting in the main the statement of the cause embraced in the opinion of the chancellor, the case for the purpose of this appeal may be summarized as follows: The mortgage company, after default, purchased the mortgaged premises at its own foreclosure without authority to that end in the mortgage; and subsequently within a few months, in March, 1889, filed this bill against Mrs. Pollard, the mortgagor, and others for the purpose (among others) of compelling her to elect to affirm or disaffirm the purchase. The mortgage, exhibited to and made a part of the bill, contained this provision: "If it shall become necessary to employ an attorney to foreclose this mortgage, they (meaning the mortgagors) will pay such reasonable attorney's fees and all other lawful and proper costs and expenses that may be incurred by the

mortgagee in that behalf, and this mortgage shall stand security for the same." The bill in its original form alleged that "orator employed certain attorneys for the purpose of making said sale and foreclosing said mortgage, and to obtain their legal advice and counsel with reference thereto, and thereby became liable to pay its said counsel twenty-three hundred dollars as counsel fees." The prayer of the bill was that respondents be required to elect whether they would disaffirm and avoid the purchase by complainant; and offered in the event of disaffirmance to do equity generally, and in particular to account for rents. The further prayer was, still in event of disaffirmance, for foreclosure for the amount of the debt secured by the mortgage and necessary expenses, "including your orator's said attorney's fee for foreclosing this mortgage as well as for filing this bill." There was a prayer for general relief, but no specific relief was prayed in the event of an election by respondents to confirm the purchase, nor was there any offer general or special to do equity in the event of an election by respondents to confirm. On August 12, 1889, the respondent, Mrs. Pollard, answered the bill and in that answer definitely elected to ratify and confirm complainant's purchase. The cause, then involving other issues, was prosecuted to a final decree, from which an appeal was taken to the Supreme Court, where it was decided that complainant was not entitled to attorney's fees for filing the bill and prosecuting the suit. The complainant then amended its bill by striking out its claim for attorney's fees for filing this bill, and the cause again progressed to a final decree. Another appeal was taken to the Supreme Court, and it was then decided that complainant was entitled under the mortgage to attorney's fees for filing this bill and prosecuting this suit, but that no decree to that effect could be rendered because there was no prayer in the bill for such relief in the event of an affirmance of the sale by the respondents. And then complainant again amended its bill by striking out these words: "And orator further prays that, in case the said defendants, or either of them having a right to disaffirm said sale,

should elect to do so, an account may be taken before the register of this court for ascertaining the amount of principal and interest due upon the said note and interest coupons secured by the mortgage so given to orator as aforesaid, including the necessary expenses incident to advertising and making said sale of said mortgaged premises and including your orator's said attorney's fees for foreclosing said mortgage under the power of sale contained therein, as well as for filing this bill," and inserting in lieu thereof the following words: "Orator further prays that the account may be taken before the register of this court for ascertaining the amount of interest and principal due upon said note and interest coupons secured by the mortgage so given to your orator, as aforesaid, including the necessary expenses incident to advertising and making said sale of said mortgaged premises, and including your orator's attorney's fee for foreclosing said mortgage under the power of sale contained therein, as well as for filing this bill and prosecuting this suit." The prayer of the bill in so far as it calls upon respondents to elect has never been changed in any respect. Subsequently, on March 18, 1899, Mrs. Pollard filed her answer to the bill as last amended, which answer she makes a cross bill, and therein she incorporates these words: "And this defendant having never fully answered said original bill and all amendments thereto, in accordance with the several prayers therein, hereby strikes out all matters stated, alleged, or averred in any of her answers, or other pleadings heretofore filed by her, which are inconsistent with or repugnant to this answer." And she then in said answer and cross bill again elected between affirmance and disaffirmance of said sale under the power and purchase by complainant in these words: "This defendant now in consequence of and answering the said bill as last amended, now exercises her right to elect to disaffirm or to affirm said sale, elects to disaffirm and does hereby disaffirm the said sale so made by complainant under the power contained in said mortgage." This cross bill avers that Mrs. Pollard is the owner of the premises in-

volved, the complainant is in posession under said voidable sale and receiving the rents and profits, as indeed is shown by the original bill, that electing to disaffirm said sale she is entitled to redeem from the mortgage, etc., etc., and the prayer is that she be let in to redeem, that an account be taken of the mortgage debt, and of the rents received by the mortgagee, that said rents be applied to said debt and she offers to pay any balance found due thereon, etc., etc. The respondent in the cross bill, the Mortgage Company, complainant in the original bill, demurred to the cross bill and also moved to dismiss for want of equity. on the grounds, in substance, *first,* that the election to affirm the sale first made by Mrs. Pollard was conclusive upon her and ·irrevocable, especially as decrees final in their terms had been entered in the cause ascertaining and declaring such election by her; *second,* that she had lost her right to disaffirm the sale and purchase by the mortgagee through *laches* in delaying for more than two years after the sale to assert it. There was also a plea by respondent in the cross bill setting up a sale of the premises by the complainant after Mrs. Pollard's original election to affirm the sale, another such election by her after the sale with knowledge of it on her part, improvements, etc., etc., by the purchaser at that sale, etc., etc. This plea was held insufficient, and the motion to dismiss for want to equity and the demurrer were overruled; and on final submission there was a decree granting the relief prayed for in Mrs. Pollard's cross bill.

The two former decrees rendered by the city court in this cause are to be left entirely out of view on this appeal. They were each reversed and annulled on·appeal to this court (103 Ala. 289 and 120 Ala. 1), and thereby were utterly destroyed for all purposes;. the judgments here leaving the case to stand as if they had not been rendered. It was even said on the last appeal, though unnecessary to be said, that "the reversal of the decree of the city court opens the case, and gives the court jurisdiction of all interlocutory orders and decrees."— *American Freehold Land Mortgage Co. v. Pollard,* 120 Ala. 1, 8.

Leaving those expunged decrees out of view, it is plain that the original bill when filed and as it stood all through the litigation, down to and including the time the final decree now appealed from was entered, presented the case of an imperfect and voidable foreclosure of a mortgage under a power of sale contained therein, the infirmity resting on the fact that the mortgagee, without power so to do being conferred upon it by the instrument, became the purchaser at its own foreclosure sale; and from the first to the last the bill called upon the mortgagor to elect whether she, in the exercise of the right resulting to her from the infirmity stated, would affirm said sale, and thereby perfect the attempted foreclosure, or disaffirm the same, and thereby wholly avoid and annul the foreclosure, leaving the parties in the attitude and relation of mortgagor and mortgagee before foreclosure to each other. And, moreover, the averment was all along in the bill that the complainant was in possession and in the perception of rents; and from the time of filing to this day it has contained an offer to account for rents as mortgagee in possession in the event the respondent elected to disaffirm its purchase. And, too, all along it has prayed a foreclosure of the mortgage in said event of an election by the mortgagor to disaffirm said sale. And all these matters were none the less in the bill and to be taken as parts of it at the last hearing because of amendments which seem to ignore them and proceed apparently upon a theory of relief inconsistent with them. They should have been stricken if complainant intended the amendments to displace them.—*Brackin v. Newman*, 121 Ala. 311; *Taunton v. Brooks*, 46 Ala. 619; *Adams v. Phillips*, 75 Ala. 461; *American Freehold Land Mortgage Co. v. Sewell*, 92 Ala. 163.

On this state of case, it is clear that if for any reason Mrs. Pollard had made no election in the premises up to the time of the filing of her last answer, which she made a cross-bill, her right to elect then was entirely free and unfettered and could have been exercised as well by disaffirmance as by an affirmance of the sale. For while a party having this right of election must exercise it within a reasonable time—and such

time by analogy to the statutory period for redemption
after the foreclosure has been declared to be two years
in ordinary cases—this rule has no application, and in
reason can have none, in tolling the time of election
actually made in response to a bill filed for the pur-
pose of having the election made. So long as the bill
calls for an election to be made by the respondent,
surely the complainant cannot be heard to say that the
time for election has passed: He cannot at once call for
action and insist that no action can be taken. Cases
might well occur in which, because of other matters
coming up for settlement under such a bill, it would be
impracticable for the respondent to elect advisedly with-
in the two years of the ordinary limitation; and that
they may and do arise serves to show the necessity for
the application to this class of cases of the general
principle that in the absence of some intervening estop-
pel, or other matter *puis darrein continuance,* the pri-
mary rights of parties in litigation are to be determin-
ed as of the time the suit is begun, and, however long
drawn out the cause may be, whatever rights the re-
spondent had at the beginning he has also at the end,
unless since the beginning he has in some way, apart
from the mere efflux of time, lost his original rights.
And this without reference to the complainant's atti-
tude throughout the pendency of the cause of calling
on the respondent to assert the rights he had at the
institution of the suit. Indeed, we apprehend that a
mortgagee purchasing without authority might rein-
vest the right of election to affirm or disaffirm in the
mortgagor after it had been lost by the lapse of two
years without assertion, by filing a bill then to settle
the title and therein offering this option to the mort-
gagor, thereby securing to the mortgagor a right which
he did not have at the institution of the suit, and giv-
ing him time and opportunity to exercise it after the
lapse of the original period of limitation.—*McHan v.
Ordway et al.,* 76 Ala. 357. And upon principle it is
held that "if a mortgagee in possession after the equity
of redemption has become barred by lapse of time, ad-
mit, either by word or act, that his mortgage is still a

subsisting lien, the bar previously existing will be considered to have been waived, and the equity of the mortgagor revived." And that "an admission having this effect will be considered to have been made if the mortgagee institute proceedings, either by suit or otherwise, to foreclose his mortgage, the reason assigned being that such an act is entirely inconsistent with any pretention on his part that his possession had ripened into a title."—*Chapin v. Wright,* 41 N. J. Eq. 438, 443-4. And surely where the mortgagor has an existing right to treat the mortgage as a subsisting security merely or as having been foreclosed he cannot be and is not cut off from the exercise of that right by any lapse of time so long as the mortgagee by a bill filed before the right is barred continued to call on him to exercise it. So that we conclude in this connection that no mere lapse of time after this bill was filed and while it is pending could destroy Mrs. Pollard's right to elect now to disaffirm the sale and purchase by the complainant, and she has that right if it has not been lost to her by other cause than the lapse of time.

It is insisted for appellant that it has been so lost. It is made to appear that by her answer to the original bill Mrs. Pollard made and declared her election to affirm the sale if the mortgage itself, which she attacked as not binding on her, should be held to be valid and binding, and further that after the validity of the mortgage had been adjudged by this court she again, and this time unconditionally declared her election to affirm the sale, in an answer to the bill as first amended. It may be that an election so made would ordinarily be conclusive and irrevocable. Such an election so made could not, we apprehend, be receded from and avoided, even in the further progress of the suit in which it was made, unless the other party changed in some way the terms upon which it was made so that if the respondent were held to it she would derive less benefit or incur heavier burdens than were involved in, or secured or entailed by her affirmance when it was made. However that may be—whether or not in every case it would be open to the mortgagor to change his election till final decree rendered—we are quite convinced that in

this case, Mrs. Pollard had the right to change her election at the time she filed her answer and cross-bill to the bill as last amended, for that the terms upon which her election to affirm was made and repeated were so changed by the last amendment to the bill as to take from her several thousand dollars which she was entitled to on the averments and prayer of the bill in the event of affirmance at both times she declared her election to affirm the sale. The land embraced in the mortgage at the sale under the power brought considerably, three or four thousand dollars, more than the mortgage indebtedness. As the case was presented by the bill up to the time of the last amendment, embracing the times when Mrs. Pollard declared her election to affirm, this surplus belonged to her and was to be paid to her in the event she elected to affirm the sale, and it was upon these terms and induced by this consideration that she elected to affirm the sale. Had this status continued, probably she would have been irrevocably bound by the election she made. But it did not continue. By the last amendment to the bill all this surplus was diverted from her and devoted to the payment of complainant's attorneys, on the assumption of her election to affirm of course. Then it was, that, seeing that the terms upon which she had made her election had been changed to her detriment, that, whereas under the proposition made to her by the original bill she would receive several thousand dollars if she affirmed the sale, under the amended bill she would receive nothing upon affirmance, she filed her answer and cross-bill to the bill as last amended, and therein withdrew her former declaration of election, and declared her election to disaffirm said sale. We think she had the clear right to do this. The complainant could not thus play loose and hold her fast. Having made a definite proposition to her, she could only accept or reject it as formulated and presented, and she had a right to rely upon the proposition not being changed to her detriment. Having elected to affirm the sale on the terms offered in the event of affirmance, she could not prevent complainant from exercising its right

to amend its bill and thereby change the proposition
so as to take from her the consideration inducing her
affirmance; but she had the right to pass anew upon
the amended proposition, and say whether upon it she
would affirm or disaffirm: The amendment set at large
her power of election, released her from the election
made and gave her the right to make a new election,
conservative of her interest under the new proposition.
As said by the chancellor: "The Mortgage Company
actively induced Mrs. Pollard to make the election she
did by a proposition in definite terms; and it seems to
be a statement of equitable principle too axiomatic to
need argument to say that it cannot now be permitted
to change the terms of the proposition, and yet con-
tinue to hold the respondent to the election first made."
It must either stand to the case presented to induce her
to affirm, or, departing therefrom, it must release her
from the affirmance induced by the original presenta-
tion. So upon the bill as finally amended, we hold that
Mrs. Pollard had the right to retrace her steps and dis-
affirm the sale and purchase by the mortgagee, that she
properly exercised this right in and by her cross-bill,
that she is entitled to the relief prayed therein, and that
the demurrers to and motion to dismiss the same were
properly overruled.

There remains to be considered only the sufficiency
of complainant's plea to the cross bill, before referred
to. In substance the plea avers that after the respond-
ent had elected originally to affirm the sale, complain-
ant sold the land to one Armistead, executed to him a
bond for title, put him in possession and received the
consideration in part, that with a knowledge of all this
Mrs. Pollard afterwards repeated her affirmance, and
said Armistead has continued in possession, in other
part paid the consideration, and has made extensive,
permanent improvements, specifying the same, to the
value of seven thousand two hundred and fifty dollars,
thereby greatly enhancing the value of the land;
wherefore, the pleader concludes, "it would be inequi-
table for the respondent to be now permitted to with-
draw her election to confirm said purchase of said mort-
gaged premises by complainant, and thereby involve

[Pake v. Wilson.]

complainant and said Armistead in great loss and perhaps litigation in reference to" the sale by complainant to Armistead. Little need be said of this plea. It presents no defense against the relief sought by the crossbill of Mrs. Pollard. What we have said in another connection shows the grounds of our conclusion that Mrs. Pollard is entitled to the relief prayed. The complainant itself gave her the right to disaffirm the sale. It cannot defeat that right by its own action in making a re-sale *pendente lite;* and Armistead of course has no greater rights than the company—mortgagee—had. Whatever the company did with the land after this suit was instituted was necessarily subject to the final determination of the rights of the parties to the suit, and Armistead of course purchased and made improvements upon the land at the peril of any result reached in this litigation between the mortgagor and mortgagee, having, it is scarcely necessary to say, recourse for his damages against his vendor; and if he were a party to this cause, which he is not, he could assert no right or defense other than such as the complainant mortgagee could assert.

We find no error in the decree of the city court, and it must be affirmed.

Affirmed.