# New England Mortgage Security Co. v. Powell.

*Bill to Cancel Mortgage and Enjoin Foreclosure Sale.*

| | |
|---|---|
| 97 | 483 |
| 99 | 291 |
| 97 | 483 |
| 101 | 367 |
| 97 | 483 |
| 109 | 551 |
| 97 | 483 |
| 115 | 426 |
| 97 | 483 |
| 119 | 182 |
| 97 | 483 |
| 128 | 631 |
| 97 | 483 |
| 140 | 247 |

1. *Pleadings—offer to do equity.*—Where a bill filed to cancel a mortgage averred that it secured a contract governed by the laws of New York, and by such law, void because of usury, or treated as an Alabama contract, it was void because the payee was a foreign corporation, engaged in business in this State, without having complied with its laws, and the complainant offers to pay the mortgagee whatever sum may be due on account of the matters set forth in the bill, it is a substantial offer to do equity

2. *Surplusage not ground of repugnancy.*—It being shown in such bill that the mortgage contained a provision that it should be construed and governed by the laws of Alabama, and was really an Alabama contract, a demurrer to the whole bill on the ground that the bill is repugnant in averring that the mortgage is void by the laws of both States, and at the same time offering to pay what is due on the debt, since the averments that the contract is governed by the law of New York, is surplusage, and the demurrer does not point out the real repugnancy.

3. *Injunction; when dissolution matter of discretion.*—Whenever it appears that the continuance of the injunction will probably cause less inconvenience and injustice to the defendant than would result to the complainant from its dissolution, the discretion of the court is well exercised in refusing to dissolve the injunction, and a sale under the power contained in the mortgage, of a farm stocked with teams and laborers was properly enjoined in this case until the questions arising out of the mortgage could be adjudicated.

APPEAL from Lowndes Chancery Court.

Heard before the Hon. JOHN A. FOSTER.

Bill in equity by U. G. W. Powell against New England Mortgage Security Company, to cancel a mortgage and enjoin a foreclosure of the same. One of the grounds of demurrer to the bill is as follows: That said bill in its allegations and also in its prayer for relief is repugnant and contradictive in this: that it alleges the mortgage contract is

governed by the statute law of New York, and therefore
illegal and void, and at the same time offers to submit to
the jurisdiction of the court and avers facts that show it
legal, and to pay whatever sum the court decrees to be
due."

WEBB & TILLMAN, and CALDWELL BRADSHAW, for appellant,
contended that the offer to do equity was insufficient, citing
*Rogers v. Torbutt*, 58 Ala. 524; *Loan Co. v. Lake*, 69 Ala.
456; that the injunction should be dissolved: *Weems v.
Weems*, 73 Ala. 462; *Collier v. Falk*, 61 Ala. 105; *Jones v.
Ewing*, 56 Ala. 360; *Satterfield v. John*, 53 Ala. 127; *Cham-
bers v. Alabama Iron Co.*, 67 Ala. 3b3; *Garrett v. Lynch*,
44 Ala. 683.

J. C. RICHARDSON, for appellee, as to retention of the in-
junction cited *Whitley v. Dunham Lumber Co.*; 89 Ala. 497;
*Western Ry. Co. v. Witherow*, 82 Ala. 194; *Chambers v. Iron
Co.*, 67 Ala. 353; *Harrison v. Yerby*, 87 Ala. 189; *Rembert v.
Brown*, 17 Ala. 667.

HEAD, J.—The purpose of the bill is to annul and cancel,
and perpetually enjoin the foreclosure of a mortgage exe-
cuted by the complainant, the appellee, to the appellant on
the 24th day of December, 1886, upon lands therein de-
scribed, to secure a promissory note made by complainant
to appellant for the sum of twelve hundred dollars borrowed
money, and interest coupons thereto attached. Previously,
in January, 1882, complainant executed to appellant a mort-
gage on the same lands to secure a note contemporaneously
made, for the sum of eight hundred and fifty dollars, and
the mortga e and note of December 24, 1886, above men-
tioned, were given in renewal and extension of the last
named, as well as to secure an additional loan of money
then made to complainant by appellant, and embraced in
the note for twelve hundred dollars. The bill avers that
complainant received from appellant, of the two loans for
which the two mortgages were given, only the sum of one
thousand dollars; which sum he admits he has never paid.

The validity of the note and mortgage is assailed and their
cancellation sought on two grounds:

1. Treating them as contracts and transactions made and
had in the State of Alabama, the tenth paragraph of the bill
avers that the appellant is a foreign corporation, organized
under the laws of Connecticut, and that at the time of the
execution of said notes and mortgages it did not have a

known place of business in the State of Alabama, and an
authorized agent therein, as required by section 4 of Art.
XIV. of the Constitution, and,

2.   That the said notes and mortgages are governed by the
laws of New York, because "said application" (for the loans)
"and the alleged mortgage and notes were presented to,
passed upon, and accepted by said New England Mortgage
Security Company, and the contracts and agreements to loan
the said sums of money by it to complainant, and the actual
loans of the sums which the New England Mortgage Secur-
ity Company actually loaned to complainant, and the actual
delivery of the notes and the alleged mortgages hereinbefore
mentioned, and the payment of the said sums of money to
this complainant, and the repayment by complainant to the
said New England Mortgage Security Company were, each
and every act, done and performed, consummated and car-
ried on in the City and State of New York."   The bill then
alleges that by the statute laws of New York the rate of in-
terest on such loans is fixed at six per centum per annum,
and that contracts of the character of those in question,
whereupon or whereby a greater rate of interest shall be re-
served or taken, secured, or agreed to be reserved or taken,
&c., shall be and are void; and that such greater rate than
six per centum per annum, was reserved or taken by appel-
lant for the loans in question.

The mortgage of December, 1886, exhibited with the bill,
in connection with averments relating thereto, shows that it
was executed in Lowndes county, Alabama; that the mortga-
gor then resided, and the lands lay in that county, and that the
advertisement and sale of lands, under the power of sale con-
tained in the instrument, if foreclosure became necessary,
should be had in that county.   It contains also a stipula-
tion that the note and mortgage shall be governed and con-
strued by and under the laws of Alabama, where the same
are made.   The note was made payable at the office of the
Corbin Banking Company in the City of New York.

Relying upon these two grounds of attack upon the valid-
ity of the note and mortgage, the complainant, in the twelfth
paragraph of the bill, avers his conclusion that he is "not
indebted under the law as administered in this court in any
manner whatever to the said New England Mortgage Secur-
ity Company," but, he proceeds to state, "if complainant is
mistaken in this he is ready and hereby offers to pay to the
said New England Mortgage Security Company whatever
sum or amount this court may adjudge that he is due and
owing to it on account of the matters contained in this bill

of complaint." The bill prays for a cancellation of the mortgage, or that the exercise of the power of sale therein contained and the collection of said mortgage and notes be perpetually enjoined; to which is added the prayer for general relief.

The defendant demurred to the bill assigning several grounds, the principal of which are that complainant does not sufficiently offer, in the bill, to pay the defendant, as a condition of relief, the sums of money he admits he received by virtue of said mortgage securities with lawful interest; and that the allegations are repugnant. The demurrers were overruled.

It is settled in this State, and it is believed to be a principle recognized generally in equity jurisprudence, that where a party applies to a court of equity to cancel a contract or agreement entered into by him, on the ground of illegality in violating the provisions of some statute prohibiting the making of such contract or agreement, the court will require him, as a condition to granting the relief, to do equity by restoring or repaying whatever he may have received under the contract or agreement sought to be cancelled; and he must expressly offer in his bill so to do.—*American Freehold Land Mortgage Company v. Sewell*, 92 Ala. 163; and cases there cited. See also, Pomeroy's Eq. § 391; 2 Story's Eq. §§ 693–694. We need not decide on this appeal whether, under the averments of the bill, the transactions assailed were Alabama transactions, or governed by the laws of New York. If either be true and there was such violation of the local law in respect of them as charged in the bill, the note and mortgage are void, and complainant is entitled to have them delivered up and cancelled, upon repaying to the defendant the sums of money actually received by him or to his use and benefit with lawful interest thereon. Has complainant made sufficient offer in that behalf? We have copied above his language. The offer, it must be admitted, is somewhat equivocal. It is not an unconditional offer to repay what complainant received or had the benefit of, with lawful interest, but the allegation in effect is that, if the position taken by him that he is not indebted at all, by reason of the said invalidity of the transaction, be a mistaken one, then he is ready and offers to pay whatever sum the court may adjudge that he is due and owing to the defendant. Technically, if the notes and mortgages are void for either of the reasons assigned, complainant does not owe defendant any thing, by virtue of any contractual obligation they create. His duty to repay arises, as we have indicated, from the prin-

[New England Mortgage Security Co. v. Powell.]

ciple of equity that a complainant must come into court with clean hands; that he will not be permitted to invoke the aid of a court of equity to obtain relief against a prohibited contract, in the making of which he and the other contracting party were *in pari delicto*, and under which he received money or other thing of value, without making restoration. Better pleading demanded a more direct and unconditional offer to repay such sums as we have said he must pay as a condition of relief. But, upon due consideration of the language employed we hold it to be a substantial compliance with the rule. The purpose of the rule requiring the offer to be made in the bill, we apprehend, is to test the good faith of the complainant; to require that he purge himself as far as possible of the guilt of complicity in the unlawful transaction, by declaring his purpose and readiness to do complete equity by restoring, as far as is in his power, the other party to his original *status*.. The present offer substantially declares complainant's purpose and readiness so to do. Its only condition is that the court shall decide that the duty rests upon him. That being done, he is ready and willing to pay whatever sum it may be determined by the court he should pay as a condition of the desired relief.

We do not think the objection of repugnancy is well assigned by the demurrer. As we held in *Am. Freehold Mortgage Co. v. Sewell, supra,* the position taken by complainant in the bill that the note and mortgage are Alabama transactions and also that they are New York transactions are clearly repugnant, but the demurrer does not reach the defect. The repugnancy complained of is that the bill avers that the transactions are void under the laws of New York and at the same time offers to submit to the jurisdiction of the court and avers facts that show the mortgage is legal and offers to pay whatever sum the court decrees to be due. The demurrer is to the whole bill. We may concede the correctness of the proposition it maintains, and eliminate from the bill the eleventh paragraph which sets up the facts designed to show that the note and mortgage are Alabama transactions and void for violations of our Constitution. To sustain the demurrer as it is assigned, however, would put the entire bill out of court, which in view of what we have said would be improper. The real repugnancy is not presented so we can act upon it.

Incorporated in the bill is a prayer for a temporary injunction restraining threatened foreclosure of the mortgage under the power of sale therein contained. In support of this prayer, in addition to the grounds of equity we have al-

[New England Mortgage Security Co. v. Powell.]

ready noticed, the bill alleges that complainant has his homestead upon the lands; that the lands are stocked with teams, &c.; laborers are employed thereon, and complainant is carrying on farming operations there; that if the lands are sold under the mortgage these operations will be stopped, the laborers thrown out of employment and complainant will be ejected from, and will lose his land and homestead for the reason that under the terms of the alleged mortgage complainant is required to surrender the possession of the premises to the purchaser at the sale, and waive his right or equity of redemption, to such purchaser; and further that should complainant fail, on demand, for ten days, to surrender possession to the purchaser, his statutory right of redemption will be cut off and lost. The bill further avers that the defendant is asserting and claiming false and unfounded claims and demands against complainant, claiming that the same are secured by the mortgage, in this, that defendant claims the full amount of said note, to-wit $1,200, when, in fact, only $1,000.00 was received thereon; also divers sums of money claimed to have been paid by it for insurance on the buildings, taxes on the lands, attorney's fees, and other costs and expenses, the amount of which complainant has no power of ascertaining; and it is insisted there should be an accounting in court as to these matters.

The allegations of unfounded charges made by defendant are expressly and distinctly denied by the sworn answer. In reference to these allegations, we remark that this is not a bill to redeem. Its equity rests upon the alleged invalidity of the note and mortgage from which arises complainant's right to have them cancelled as a cloud upon his title. A bill to redeem has essentially different qualities and objects. It conclusively assumes the validity of the mortgage, and prays, not for its cancellation, as void casting a cloud on the title, but that payment of the mortgage debt be established or that complainant be permitted to pay what may be found due thereon upon an accounting; that the forfeiture be set aside, and that complainant obtain a reconveyance of the legal title, or a decree to that effect. No such relief can be had under the present bill. There can be no accounting as between mortgagor and mortgagee, as such, in this case. It is true, as we have said, the court may ascertain the sum complainant shall pay in order to carry out his offer to do equity, and such ascertainment may involve necessity for a reference, but the execution of the reference is of a different character from that obtaining in bills to redeem, and governed by different principles. In the present case the inquiry

would be, what did the complainant receive, or obtain the use and benefit of, under and by virtue of the transactions sought to be set aside, which he has not refunded? and in the other, how much is due upon the mortgage indebtedness —what charges did the mortgagor subject himself to, as such, by virtue of the terms of his contract, and how far have those liabilities been discharged? In view, however, of the express and positive denial of the answer that any sum or charge whatever is asserted against the complainant except the amount it actually loaned him, with lawful interest, we will in any view we might take of these allegations leave them out of consideration in determining the motion to dissolve.

The answer does not deny, but admits, as immaterial, the averments of the bill that the lands in controversy constitute the farm and homestead of the complainant, who has the same stocked with teams and supplied with laborers, upon and with which he is carrying on farming operations, and that irreparable damage would result from a foreclosure of the mortgage pending complainant's bill for relief.

The averments upon which the equity of the bill rests, viz: those which assert the invalidity of the notes and mortgages for violation, in the first place, of the Constitution of Alabama, and in the second, the laws of New York, are fully and completely denied by the answer.

It is a general rule, that when the answer contains a full and complete denial of the allegations upon which the equity of the bill rests, the injunction, on motion, should be dissolved.—*Jones v. Ewing*, 56 Ala. 360; *Collier v. Falk*, 61 Ala. 105; *Weems v. Weems*, 73 Ala. 462.

The rule is not inflexible. The motion rests in sound judicial discretion, and whenever it appears that irreparable injury may result to a party from the act sought to be enjoined, or if there be any peculiar fact or circumstances in the case which convinces the court that the injunction ought to be retained, dissolution will be refused and the injunction retained until the hearing on the merits, notwithstanding the denials of the answer.—*Satterfield v. John*, 53 Ala. 127; *Chambers v. Ala. Iron Co.*, 67 Ala. 353.

In *Whitley & Trimble v. Dunham Lumber Co.*, 89 Ala. 493, the bill was to redeem, alleging payment of the mortgage debt, or if mistaken in that offering to pay what may be found due on an accounting. Injunction restraining foreclosure was asked for, and a temporary writ obtained, which the defendant moved to dissolve. The bill averred, also, that by a foreclosure of the mortgage the large saw-mill business of

complainant, and railroad operated in connection therewith, would be stopped, large number of employees thrown out of employment, and complainant prevented from filling orders and executing contracts it has from and with parties outside of the State; that its credit and commercial standing with those with whom it has contracts and in financial circles, will be impaired and complainant be otherwise irreparably injured and damaged. The answer fully denied the fact of payment of the secured debt. The court held that the case comes especially within the doctrine of *Harrison v. Yerby*, 87 Ala. 185, in which it was held that the Chancery Court is invested with wide latitude in acting upon motions to dissolve injunctions on the denials of the answer; and that whenever it appears that a continuance of the writ will probably cause less injustice and inconvenience to the defendant than would result to the complainant from its dissolution, this discretion is well exercised in denying the motion for dissolution.

In the present case complainant has certainly the right to try the questions raised upon the validity of the mortgage. If there be a foreclosure, pending that trial, he must needs surrender possession to the purchaser within ten days, or else forfeit his right to redeem under the statute, if upon the hearing of his cause he should fail, and the validity of the mortgage be established. If he should succeed in obtaining the relief prayed, he will have suffered such enforced temporary dispossession with the injurious consequences which readily suggest themselves to the practical mind. It is his home, and he would be deprived of shelter. His teams would probably remain idle. His laborers would probably find other fields of employment. His farming operations would be for a time broken up and he would suffer inconvenience and loss necessarily incident to their re-establishment. We perceive no such special inconvenience or loss the defendant would suffer by the suspension of foreclosure until this cause can be heard on its merits; and if there be damage resulting to it from the injunction, it is such as can be readily measured and ascertained, and fully compensated for by action on the injunction bond. We are of opinion, therefore, that the injunction ought to be retained until the hearing, and the order or decree of the chancellor is affirmed.

Affirmed.