# George *et al.* v. New England Mortgage Security Co.

## *Bill in Equity for Cancellation of Mortgage.*

1. *Cancellation of mortgage; offer to do equity.*—Where a mortgagor files a bill in equity for the cancellation, as a cloud on his title, of a mortgage executed to a foreign corporation to secure a loan made by

[George, *et al.* v. New England Mortgage Security Co.]

it, on the ground that the mortgage, had not complied with the requirements prescribed by statute as conditions precedent to its right to do business in the State, he must offer to repay the money received, with lawful interest.

2. *Usury; commission charged by broker.*—Where a broker employed to negotiate a loan has the borrower to comply with the conditions imposed by the proposed lender, and such lender knows nothing of the preparation of the security or of the terms of the borrower's employment of the broker, and has the right to accept or reject the loan when offered, if such lender accepts the security and makes the loan, the broker does not thereby become the agent of the lender, and the loan is not rendered usurious by the commission charged by the broker.

APPEAL from the Chancery Court of Limestone.
Heard before the Hon. THOMAS COBBS.

R. A. McCLELLAN, for appellants.—The evidence shows that the Corbin Banking Company was really the agent of the Mortgage Company, and that James Benagh was really the agent of the Corbin Banking Company. All the services render by the agents were for the exclusive benefit of the appellees. They were made to take the form of agents for the appellants in furtherance of a stupendous scheme of usury. These agents, while ostensibly the agents of the appellants, were in fact the faithful, diligent agents of the appellees.—*Edwin v. Equitable Trust Co.*, 141 U. S. 384, 408, 411; *Banks v. Flint*, 54 Ark. 40; *Brown v. Brown*, 38 L. C. 173; 32 Fed. Rep. 113; 10 Atl. Rep. 833; 14 S. W. Rep. 769; 15 Neb. 335; 24 Am. St. Rep. 239; 55 Am. Dec. 595; 29 Am. Rep. 69.

JAMES E. WEBB and CALDWELL BRADSHAW, *contra*.

COLEMAN, J.—The bill was filed by appellants for the purpose of having a mortgage, executed by them to respondents, cancelled as a cloud on their title to certain lands conveyed in the mortgage. As originally filed, the relief prayed for was based upon the averments that the New England Mortgage Security Company was a foreign corporation, and that the mortgage was taken in prosecution of business in Alabama, without having complied with the constitutional and statutory laws, which require every foreign corporation, doing business

in this State, to have "a known place of business, and an agent or agents residing thereat," and that the mortgage was taken in violation of law, and was therefore illegal and void. The bill was subsequently amended by making the Corbin Banking Company and James Benagh parties defendant also, to whom was executed at the. same time a second mortgage on the same lands, to secure a further stated indebtedness. The Corbin Banking Company was a firm, not a corporation, and James Benagh an individual. As such, the constitutional and statutory provisions as to foreign corporations have no application to these parties. The bill avers, however, that the Corbin Banking Company, for whose benefit the second mortgage was taken, was in fact the agent of the New England Mortgage Security Company in procuring the loan, and substantially avers that the debt secured by the second mortgage constituted a part of the consideration of the first mortgage, and rendered it usurious, illegal and void.

The complainants in the bill as amended offer to do equity, and submit themselves to the jurisdiction of the court, "and pray that, for the satisfaction of whatever may be found to be legally due on both of these mortgages, a sale of the land be made by this court, and that both of these mortgages be foreclosed according to the practice of this court, to the full extent of all that may be legally due on either or both." It is a maxim of equity, of almost universal application, that he who seeks equity, must do equity.—6th Am. & Eng. Ency. Law, 707 ; 1 Story Eq. § 64e : In 1 Pom. Eq. Jur., section 391, it is said, that "the rule extends to all cases where a party seeks to have a contract set aside and cancelled, on the ground of its illegality in violating the provisions of some statute ; the court will require him, as a condition to its granting relief, to pay what is really due on the agreement, unless the illegality is a malum in se, or the statute itself prevents the imposition of such terms." The rule has been applied in this State to contracts for securing loans from foreign corporations doing business without having complied with the statute, the court using this strong language : "We can not assent to the proposition that a person can obtain another's money, upon the faith and assurance of a mortgage security, and, the next moment after securing and ap-

[George, *et al.* v. New England Mortgage Security Co.]

propriating it, go into a court of conscience, and ask that court to cancel the security as a cloud on his title, still retaining the money, and making no offer to repay the money he has received, with lawful interest."—*Grider v. Amer. Freehold L. Mort. Co.*, 99 Ala. 281; *New England Mortgage Security Co. v. Powell*, 97 Ala. 483; *Ross v. New England Mortgage Security Co.*, 101 Ala. 362; *Hartly v. Matthews*, 96 Ala. 224; *Amer. Freehold Land Mortgage Security Co. v. Sewell*, 92 Ala. 163.

The respondents answered the amended bill, in which they deny that the Corbin Banking Company and Benagh, or either of them, were the agents of the New England Mortgage Security Company in procuring or negotiating the loan, deny that the Security Company ever had any interest in the second mortgage, aver that the Corbin Company did an independent brokerage business, wholly disconnected from the business of the Security Company, and that the Corbin Company acted for and represented the borrower, solely, throughout the entire transaction, for an agreed price, to secure the payment of which the second mortgage was executed. They deny all usury, and deny the facts upon which the allegations of usury were based. The New England Mortgage Security Company by its answer accepts the offer of the complainant to do equity, by paying the amount of money borrowed, with legal interest, and demands no more.

The pleadings narrow the issues down to the single one of usury, and this issue depends upon the determination of the question as to whether the consideration of the second mortgage mad. for the benefit of the Corbin Banking Company constitutited any portion of the consideration for the first mortgage, or enured to the benefit of the lender with its knowledge and consent, and whether the Corbin Banking Company or James Benagh in negotiating the loan acted for and represented the New England Mortgage Security Company, or the borrowers, the complainants. This question has been before this court many times.

In the case of *Ginn v. New England Mortgage Security Company*, 92 Ala. 135; the loan was procured from the identical defendant, by the negotiation of the Corbin Banking Company, in all respects similar to the present case, and the conclusion was, on the facts found in the

record, "that the corporation did no more than lend a sum of money to the defendant, pay it to his agent for him, and secure its repayment, with only lawful interest thereon, by the mortgage and notes, now sought to be foreclosed and collected: The reservation of commissions by Skaggs [Benagh in the present case] does not taint the transaction with usury." The same conclusion was reached in the *American Freehold Land Mortgage Company v. Sewell*, 92 Ala. 164.

In the case of *Allen v. McCullough et al.*, 99 Ala. 613, it was insisted with great earnestness that the facts showed that the Corbin Banking Company and Collier and Pinkard were in fact the agents of the New England Security Company in procuring the loan, and the testimony on this point was very full. After a careful consideration of all the evidence our conclusion was, "that the evidence was of such a character as to leave no doubt in the mind of the court, that as to the loan by the New England Mortgage Security Company, that neither the Corbin Banking Company nor Collier & Pinkard, whether acting separately or together, were the agents of the lender."

In the case of the *Edinburg American Land Mortgage Co. v. Peoples*, 102 Ala. 241, the direct question arose, and, in passing upon the evidence and in construing the contract of employment entered into between the borrower and the agent who prepared the abstracts and procured the loan for the borrower, the court held that such person was not the agent of the lender. So in the case of *American Mortgage Co. of Scotland v. King*, 105 Ala. 358, the loan had been procured through the Loan Company of Alabama and one Manghen, acting in the same capacity in that case as the Corbin Company and Benagh in the present case, and the bill averred that the Alabama Loan Company or Manghen were the agents of the lender. The fact averred was the material issue of the case, and it was held that Manghen was the agent of the borrower to receive the money.

Other cases might be cited. Each of the cited cases were decided upon the facts in evidence in the particular case, and to this extent only are decisive of the question in the present case. While in some respects the facts in evidence in the case at bar are fuller, we are unable to find any fact to change our conclusion. The

[George *et al.* v. New England Mortgage Security Co.]

burden is on the complainant to establish the usury charged. The most that can be said of it is that it excites conjecture or suspicion, but it falls far short of overcoming the positive testimony of the respondents. The evidence makes clear to our minds, the following facts : The defendant corporation has money to loan. The Corbin Banking Company in this case, as the Alabama Loan Company in other cases, as brokers, negotiate loans for whoever sees proper to employ them, and can furnish the necessary security. Their business as brokers is made known through local agents and by advertisements. These brokers know the terms and conditions upon which money can be borrowed from the companies or corporations having money to loan. After the terms have been complied with on the part of those who desire to obtain a loan, the securities are offered to the lenders, and are accepted or rejected as they may see proper to act. They are under no obligations to accept any proffered security. They know nothing of the preparation of the security nor the terms of employment of the brokers by the borrower. These all precede the loan. If the security is accepted the money is paid over as directed by the written agreement and instructions of the borrower. The validity of the security for the loan taken by the lender is in nowise affected by the commissions reserved or the terms of the agreement between the borrower and the broker employed by him. These are the only legitimate conclusions to be drawn from the legal evidence in the case, and that without regard to the testimony excepted to and noted in the note of testimony. The decree of the chancellor conforms to the prayer of complainants' bill, that these mortgages be foreclosed for whatever amount "that may be justly due on both or either mortgage."

We find no error in the record available to the appellants.

Affirmed.