(76 South. 356)

INTERSTATE TRUST & BANKING CO. et al. v. NATIONAL STOCKYARDS NAT. BANK. (2 Div. 644.)

(Supreme Court of Alabama. May 24, 1917. Rehearing Denied June 30, 1917.)

CANCELLATION OF INSTRUMENTS ⟨⟩24(2) — DOING EQUITY.

A judgment creditor of a mortgagor may not maintain suit to cancel the mortgage, of record long before creation of his debt, as void under Code 1907, § 3653, because given to a foreign corporation having no permit to do business in the state, without doing equity, by offering to refund the money loaned by the mortgagee.

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Chancery Court, Sumter County; Thomas H. Smith, Chancellor.

Suit by the National Stockyards National Bank against the Interstate Trust & Banking Company and another. From an adverse decree, defendants appeal. Reversed, rendered, and remanded.

The Pinson & Geiger Land Corporation, Incorporated, located in Sumter county, in 1910, executed and delivered to the Interstate Trust & Banking Company a deed of trust to secure bonds in the principal sum of $100,000, proposed to be issued, conveying therein approximately 10,000 acres of land in Sumter county, Ala. The bonds were in part bought by the Mortgage Securities Company. In 1916 default having been made in the payment of these bonds, or some of them, as well as of interest coupons, the trustee, in accordance with and under the power conferred by the deed of trust, undertook to sell the property conveyed and advertised for sale. Before this date, but long after the execution of the deed of trust and the issuance of the bonds, the appellee became a judgment creditor of Pinson & Geiger Land Corporation in a large sum, and filed a certificate of its judgment in the probate office of Sumter county. Shortly before the advertised sale occurred, appellee filed its bill in the chancery court of Sumter county, seeking a cancellation of the said deed of trust and of the bonds thereby secured, upon the ground that the transactions evidenced by them occurred in Alabama, and that at the time of said transactions the appellants were foreign corporations not qualified under the statutes of Alabama to do business in this state, and secured a temporary injunction restraining the impending sale. The matter was submitted to the chancellor upon demurrers to the bill as the second time amended, and upon a motion to dissolve the injunction. The court overruled the demurrer to the bill as a whole, as well as to specified portions thereof, but granted the motion to dissolve the injunction, upon the ground that the proof showed the transactions to have occurred in the state of Louisiana. From the decree overruling the demurrers, appellants present this appeal.

Howe, Fenner, Spencer & Cocke, of New Orleans, La., and R. B. Evins, of Greensboro, for appellants. M. W. Borders, of Chicago, Ill., and Thos. F. Seale, of Livingston, for appellee.

GARDNER, J. Bill by appellee, complainant in the court below and a judgment creditor with a lien of the Pinson & Geiger Land Corporation, an Alabama corporation, to enjoin the foreclosure of a mortgage executed by said corporation to the Interstate Trust & Banking Company, under the power of sale conferred by the mortgage or deed of trust, and to have same canceled and declared void and an order entered for the sale of the property embraced in said mortgage for the satisfaction of the judgment lien of the complainant. The mortgage was executed January 10, 1913, and filed for record the same day. The mortgagor, said corporation, became indebted to complainant on May 27, 1915, as evidenced by its promissory note, and on April 21, 1916, a judgment was recov-

ered on said note against the said corporation; and on May 2, 1916, the certificate of said judgment was duly certified to by the clerk of the said court in the office of the judge of probate of Sumter county, and the same was duly recorded.

Complainant bases its right to relief upon the allegation that at the time of the transaction resulting in the execution of the mortgage by the Pinson & Geiger Land Corporation to the Interstate Trust & Banking Company the latter was a foreign corporation and had not qualified under the statute to do business in this state, as provided by sections 3642, 3644, 3651, and 3653 of the Code. The mortgage in question was to secure bonds in the principal sum of $100,000. The bill contained no offer on the part of complainant to refund to the mortgagee the money advanced on the faith of said security. The demurrer taking this point presents the question which is treated and considered by us as of prime importance on this appeal; and, while it was insisted by counsel for appellant that the complainant, being in no manner of privity with the transaction here attacked, cannot be held to question its validity, yet, having reached the conclusion that the bill is without equity for the reason just stated, we pass this by as unnecessary to be determined.

Conceding, without deciding, for the purpose of this case, that the complainant could maintain the bill, we have reached the conclusion that it is fatally defective in failing to offer a refund of the money advanced on the faith of the security under the familiar equitable maxim, "He who seeks equity must do equity." Speaking of this maxim, our court in Grider v. Am. F. L. M. Co., 99 Ala. 281, 12 South. 775, 42 Am. St. Rep. 58, in which case the mortgagor sought the cancellation of the mortgage on the homestead for a fatal defect in acknowledgment, said:

"We held in Mortgage Co. v. Sewell, 92 Ala. 163, 9 South. 143 [13 L. R. A. 299], and again in Security Co. v. Powell (present term) [97 Ala. 483], 12 South. 55, that a complainant seeking to cancel, as a cloud on his title, a mortgage executed by him to a foreign corporation, for money loaned, on the ground that the mortgage was void because the corporation had not complied with the laws of this state authorizing it to do business here, or because the mortgage, being governed by the laws of New York, was void for violation of the usury laws of that state, must offer in his bill to repay what he had received under and in faith of the mortgage security as a condition of the relief sought. We intend to adhere to that doctrine. We cannot assent to the proposition that a person can obtain another's money upon the faith and assurance of a mortgage security, and the next moment after he received and appropriates it go into a court of conscience, where the maxim that he who seeks equity must do equity has ever been vigorously upheld and applied, and ask that court to cancel the security as a cloud on his title, still retaining the money, and making no offer to return or repay it. If Grider needs and desires the aid of a court of chancery to clear his title of the void incumbrances, he must offer to repay the money he received, with lawful interest. If he is unwilling to do this, he must stand upon his rights at law. Equity will not help him."

This equitable maxim has been consistently adhered to by this court, in cases of this character, as disclosed by the following decisions: Coburn v. Coke, 193 Ala. 364, 69 South. 574; Douglass v. Standard Co., 189 Ala. 223, 66 South. 614; Mitchell v. Baldwin, 154 Ala. 351, 45 South. 715; Marx v. Clisby, 130 Ala. 502, 30 South. 517; George v. Mortgage Co., 109 Ala. 548, 20 South. 331; Grider v. Mortgage Co., 99 Ala. 281, 12 South. 775, 42 Am. St. Rep. 58; Security Co. v. Powell, 97 Ala. 483, 12 South. 55; Mortgage Co. v. Sewell, 92 Ala. 163, 9 South. 143, 13 L. R. A. 299.

There can be no doubt, therefore, that, under the above-cited authorities, had the bill been filed by the mortgagor, failing thus to offer equity, it would have been held by this court to be without equity. The latest expression by this court upon cases of this character is contained in Coburn v. Coke, supra, where many of our authorities are collected.

The provisions of section 3653 of the Code have not been deemed sufficient, as held by this court, to abrogate this equitable maxim. That section and the two preceding sections are but codifications of the act of March 4, 1907 (Gen. Acts 1907, p. 290). None of the provisions of said act attempted in any manner to amend sections 3642–3644 of the Code, but merely impose an additional requirement upon such foreign corporations to secure from the secretary of state the permit therein specified; and the provision of section 3653, that upon failure to obtain such permit all contracts made with, by, or to such corporations shall be null and void, was but the equivalent of what this court had held in the above-cited cases as the result of failure on the part of the foreign corporation to comply with the provisions of section 3642, requiring the filing in the office of the secretary of state of an instrument in writing, designating at least one known place of business in this state and an authorized agent or agents residing thereat. Notwithstanding this court had held that contracts entered into by foreign corporations which had not complied with our laws were void, yet we have consistently given application to the above-noted equitable maxim, and required of the mortgagor, upon his becoming the actor, seeking relief in a court of equity, to offer to do equity by a refund of the money actually advanced as a condition to relief.

There is nothing in the above-cited act of March 4, 1907, codified as sections 3651–3653, Code 1907, which indicates any purpose on the part of the Legislature to abrogate this equitable maxim and dispense with its application. It is a maxim as old as equity jurisdiction itself that "he who seeks equity must do equity," and it has been held that in its broadest sense it will be regarded as

the foundation of all equity, since courts do not protect equitable rights unless such rights are in pursuance of settled juridical notions of morality, based upon conscience and good faith. 1 Pom. Eq. Jur. § 385. In regard to its application to the usury laws of the state, the courts required rather a plain expression of the legislative intent before dispensing with its application. · Lindsay v. U. S. S. & L. Co., 127 Ala. 366, 28 South. 717, 51 L. R. A. 393; Barclift v. Fields, 145 Ala. 264, 41 South. 84. In the Lindsay Case, it was recognized that the power of a court of equity in the enforcement of the maxim is not one conferred by statute, nor is it exercised for the purpose of enforcing any contractual right. In the case of Barclift v. Fields, supra, it is pointed out that this rule was but the invention of a court of chancery for regulating its own procedure, and that the mortgagee had no vested right therein, and could not complain that the lawmaking power had enabled the mortgagor to have relief without paying interest. The rule being an invention of a court of equity, such court in its application exercises a discretion as conceived to be in the interest of equity and justice. Mo-Kan., etc., Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474; 1 Story, Eq. Jur. (12th Ed.) § 301.

We think it clear therefore, that there is nothing in the history of section 3653 of the Code indicating a legislative intent that this equitable maxim be not given application in certain cases, just as had been done theretofore under numerous decisions of our court. That the provisions of said section have wrought no change in the application of the equitable maxim was presented and decided in the recent case of Douglass v. Standard R. E. Co., 189 Ala. 223, 66 South. 614, and we adhere to that ruling.

It is therefore clear that had the bill been presented by the mortgagor, it would, under these authorities, be held without equity. Indeed, learned counsel for the appellee do not in their brief seem to seriously controvert this ·proposition, but they insist that they were not in privity with the mortgagor, but only a judgment creditor with a lien, in the exercise of a lawful right to subject the property of the judgment debtor to the satisfaction of its lien, and that under no line of reasoning should the maxim, "He who seeks equity must do equity," be applied to this complainant. Some stress is laid upon the language of section 3649 of the Code, which reads as follows:

" * * * All contracts made in this state by any foreign corporation which has not first complied with the provisions of the two preceding sections, shall, at the option of the other party to the contract, be wholly void."

That section, however, refers expressly to the two preceding sections, which relate solely to the question of franchise taxes. Sections 3651–3653, have no reference whatever to those provisions, but that portion of section 3649 above quoted is an exact reproduction of section 1323 of the Code of 1896.

Counsel for áppellant insist that in no event can the rights of a judgment creditor with reference to the property of the debtor on which he has a lien rise higher than any rights a judgment debtor could exercise at the time the judgment was recorded, citing in support Union Dime Sav. Inst. v. Wilmot, 94 N. Y. 221, 46 Am. Rep. 137; Smith v. Gott, 51 W. Va. 141, 41 S. E. 175; Shirk v. Thomas, 121 Ind. 147, 22 N. E. 976, 16 Am. St. Rep. 381; Lindsay v. Cooper, 94 Ala. 170, 11 South. 325, 16 L. R. A. 813, 33 Am. St. Rep. 105, among other authorities.

We need not inquire whether in some instances the judgment creditor with a lien might acquire a right which the judgment debtor could not exercise, but we do conclude in this particular case that upon no sound principle or good reason can it be held the right of this complainant rises superior to that of the judgment debtor. It has suffered no injury, nor changed its attitude in the least on account of the transaction. The mortgage of respondent was of record long prior to the creation of the mortgagor's debt to complainant.

As previously pointed out, the equitable maxim, "He who seeks equity must do equity," is an invention of the court of equity in the furtherance of right and justice, and is given application, not as an inflexible rule, but in the exercise of a discretion. We therefore need not be so much concerned with the question as to whether or not there is privity of estate between the judgment debtor and creditor, or other questions of that character. Here the judgment creditor seeks through a court of equity to have this property sold in satisfaction of its lien, and in furtherance of such purpose to have the mortgage to respondent declared void and canceled. Unquestionably, the mortgagor could not maintain the bill without an offer to do equity. The judgment creditor seeks to subject the title of the debtor to the satisfaction of his judgment. True, the creditor himself has received no money on the strength of the security which he here seeks to cancel, but he nevertheless seeks to subject the title of his debtor who did obtain the money on such security. Will a court of equity, in the application of the maxim which is applied in the interest of right and justice, permit the creditor under such circumstances to be exempt from the rule, with, the result that the debtor retains the money and the creditor obtains the property freed from incumbrance? We are of the opinion that it would indeed be taking a narrow view of the rule, so broad in its scope, so useful in its purpose, so strong in the defense of right and justice, to so hold; and a court of equity under such circumstances

will permit no mere legal niceties to stand in the way of its application.

We therefore conclude that the complainant in this cause, seeking the aid of a court of equity to clear its title, must offer to do equity. If it is unwilling to do this, then it must stand upon its rights at law. Equity will lend no aid.

The case of Evans v. Faircloth, 165 Ala. 176, 51 South. 785, 21 Ann. Cas. 1164, relied upon by counsel for appellee, does not at all militate against the conclusion here reached. Under the provision of our statute the wife is prohibited from becoming surety for the husband's debts either directly or indirectly, and any attempt to do so is void, and in said case it was held a junior mortgagee may maintain a bill for cancellation of a mortgage given by the wife to secure the husband's debt. The equitable doctrine here involved, "He who seeks equity must do equity," has never been applied by this court to cases of that character, and of course was given no consideration in said case. Doubtless the controlling reason why the maxim was not applied is stated in Shook v. So. B. & L. Ass'n, 140 Ala. 580, 37 South. 409, of the opinion as follows:

"The debt attempted to be secured by the void deed of trust was not complainant's. She was neither morally nor legally bound for it. Just why she should be required to offer in her bill to pay it in order to have her equity enforced against her husband, and to have the void conveyances held by the respondent association canceled as a cloud upon her title, we confess our inability to see."

The debt was not that of the wife, but she was a mere surety, and to have applied the maxim in such cases would have left no field whatever for the operation of the statute, and in fact would have effectually repealed or abrogated the same.

We hold that the bill was wanting in equity for the reason herein discussed, and the decree appealed from will be reversed, and one here rendered sustaining that assignment of demurrer raising this point and reversing the cause.

Reversed, rendered, and remanded.

MAYFIELD, SAYRE, SOMERVILLE, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN, J., dissent.

MAYFIELD, J. (concurring). I concur in the conclusion, but am of the opinion that the decision should be based on other grounds: (1) That the complainant cannot maintain this bill, whether the contract and deed of trust assailed be absolutely void or merely voidable; (2) that the court never acquired jurisdiction of the subject-matter except for injunctive relief, which was denied, and touching which no question is raised on this appeal.

A stranger to a contract cannot maintain a suit to ascertain whether the contract is valid, voidable, or void, in the absence of a statute authorizing such suits. We have such statutes in this state, dealing with fraudulent conveyances, general assignments, etc., which authorize creditors to maintain suits as to contracts to which they are not parties; but this is not a creditors' bill, within the purview of any of these statutes, and no contention is made that it is such a bill.

The bill cannot be maintained to enforce a lien, because the lienor is not a party to the suit. Surely no court would enforce a lien against a party, and sell his property to satisfy it, without giving him an opportunity to be heard, and a day in court. Such a proceeding would not be due process of law.

There is no allegation in this bill that the land sought to be sold is the property of either of the defendants to the suit, or that the complainant has any debt or demand against either. If the allegations and the theory of the bill be true—and surely the complainant is bound thereby—the legal title to the land the subject of the suit is not before the court, but such title resides in one not a party to the suit and one who, the amended bill alleges, has no interest in the suit. Until the legal title to the lands is brought before the court, the court has no jurisdiction to enforce a lien against the subject-matter of the suit. While it is a general rule of pleading that an objection for want of parties must be taken by demurrer, plea, or answer, yet an exception to the rule is that want of an indispensable party, one in whose absence no binding judgment or decree can be rendered, may be taken advantage of at any stage of the proceeding in either the trial court or the appellate court; and the appellate court should even take cognizance of the objection ex mero motu, and though never raised at all in the trial court. For this reason the question or matter is jurisdictional, and no court will ever proceed to a judgment or decree which would be absolutely void.

The bill, of course, cannot be maintained as one to remove a cloud from title, for the same reason, because neither the legal or the real title nor even the possessory right is before the court. Neither party to the suit under the averments of the bill, could obtain relief under the theory of removing cloud from title. A complainant, to obtain such relief (as this court has frequently decided), must show a legal title to, and the possession of, the land from which the cloud is sought to be removed.

How a bill to cancel a deed as absolutely void—that is, as void as if it had never been executed—and to sell the land described in such instrument, can be maintained without making the grantor a party to the bill, I confess I am unable to understand. If the deed is void in that sense, then the title is in the grantor. How then can the title pass without bringing him into court?

A bill like the one in question is entirely

different from a creditors' bill filed under our statutes. In the latter proceeding the annulment or cancellation of the conveyance is granted upon the theory that the conveyance is void only as against the complainant or a class to which he belongs, but valid as between the parties and as related to all the world except to those persons within the purview of the statute. If in such a case the conveyance is void as to the grantor, he would, of course, have to be a party to the suit in order to bring the legal title before the court. The theory of the creditors is that the conveyance to be annulled is valid so far as the fraudulent grantor is concerned, and he has no interest whatever in the subject-matter.

To epitomize and restate the propositions on which I hold the decision should be placed:

First. If the trust deed is voidable merely, the complainant, not being a party or privy to the contract, cannot maintain a suit to avoid it.

Second. If the trust deed is absolutely void, so that a stranger to the contract can assert its invalidity, then the legal title to the land is in the grantor, who is not a party to the suit and is not before the court, and the court has never acquired jurisdiction as to the res and the bill fails.