145 So. 822

**MONTGOMERY, Superintendent of Banks, et al. v. SMITH.**

6 Div. 239.

Supreme Court of Alabama.
Jan. 26, 1933.

Davis & Curtis, of Jasper, for appellants.

Chas. R. Wiggins, of Jasper, for appellee.

KNIGHT, J.

On October 29, 1931, the Central Bank & Trust Company, a banking corporation, doing a general banking business at Jasper, Ala., was placed in the hands of H. H. Montgomery, as superintendent of banks, for liquidation and settlement of its affairs.

Upon taking over this bank for liquidation purposes, the said superintendent appointed L. P. Cartwright, one of the appellants, as liquidating agent, and at the time of the filing of the petition in this cause the said Cartwright, as such liquidating agent, was in the actual possession of the properties and assets of the bank.

On the 28th day of April, 1932, H. C. Smith, the appellee, filed the petition in this cause against the said H. H. Montgomery, as superintendent of banks, and against the said Central Bank & Trust Company and L. P. Cartwright, as the liquidating agent, seeking the recovery of $2,000 in gold coin, alleged to have been deposited with said bank by the complainant on December 26 (31), 1930, for safe-keeping.

It is averred in the petition that on the 26th day of December, 1930, the petitioner, being at the time "the owner and possessor" of $2,000 in gold coin of the United States, "wishing to preserve said gold coin money in its original form, safe from being lost or stolen and having confidence in the security of the said Central Bank and Trust Company and its employees and its safety deposit vault, deposited with the said Central Bank and Trust Company his said $2,000.00 in gold coin for safe keeping in its vaults and which gold coin money was placed in a substantial cloth bag and by the officers of said bank deposited in their vaults to be held and kept by them in its original form and shape for safe keeping for your petitioner to be returned to him at any time when called for either by himself or his wife, Mrs. Dora Smith; that this gold coin money in the amount of $2,000.00 was to be and remain the special property of your petitioner, and at no time to become the property of said Central Bank and Trust Company, or any part of the assets of said Central Bank and Trust Company, it being understood and agreed between your petitioner and the bank and its officials that the bank was acting merely for the accommodation of your petitioner in receiving and keeping said gold coin money in their safety vaults for petitioner, and further *that no interest was to be paid to him by the said bank or any other consideration on account of said gold coin money being placed with them for safe keeping,*" etc. (Italics supplied.)

In paragraph 3 of the petition it is averred: "That at the time the Central Bank and Trust Company went into process of liquidation on, to-wit, October 29th, 1931, petitioner states to your honor that his said $2,000.00 in gold coin money was then in the vaults of said bank and had been continuously kept in said vaults of said bank from the time he deposited the same with the Central Bank and Trust Company for safe keeping for him up to the said date, October 29th, 1931; and petitioner further states and alleges the fact to be that ever since the said bank went into process of liquidation and was placed under the control of H. H. Montgomery, Superintendent of Banks, and his special liquidating agent, L. P. Cartwright, liquidating the affairs of said bank, this $2,000.00 in gold coin money belonging to petitioner has always remained in the vaults of said bank in the city of Jasper, Walker County, Alabama, in the same condition in which it was placed in a sack or cloth bag and was never used or loaned out by said bank, and the said gold coin is on this date in said vaults of the bank, in the possession of and under the control of H. H. Montgomery, Superintendent of Banks and his special appointed liquidating agent, L. P. Cartwright."

The petition alleges demand on the said Montgomery and on said Cartwright for the delivery of said money to petitioner, and their refusal.

Attached to the petition, and made a part thereof, are the affidavits of O. F. Cobb, active vice president, and J. W. Long, cashier, of the Central Bank & Trust Company, with reference to the deposit of said money.

Cobb's affidavit is as follows: "I, O. F. Cobb, vice-president of Central Bank and Trust Company, certify that I agreed with H. C. Smith to accept two thousand dollars in

gold for safe keeping and the same gold to be returned to him, and the said gold was delivered to us in a coin bag and kept therein to pay the particular promise as stated therein in certificate numbered 9503 per copy hereto attached, and we have paid no interest on this certificate and the party is not claiming any interest."

This statement is signed by Cobb, and is sworn to by him before Wilmer R. Scott, notary public, on January 5, 1932.

The affidavit of said J. W. Long is in the same language, and was made on same day that the affidavit of O. F. Cobb was made.

Among other things, the petition prayed that a decree be entered directing that the $2,000 in gold coin be delivered to petitioner, and for such other orders and decrees as might be necessary in the premises, and "for such other and further and different relief as the facts of this case may warrant and your honor should find petitioner to be entitled," etc.

The respondents each demurred to the petition, assigning numerous grounds, among them, that the said L. P. Cartwright and Central Bank & Trust Company are not proper or necessary parties. No argument is here made in support of the contention that the petition was defective in any way, except in brief of appellant a short statement is made to the effect that the Central Bank & Trust Company, being in liquidation, and in the hands of the superintendent of banks, and said Cartwright, being simply the liquidating agent, were not proper or necessary parties. The brief on this point concludes: "We don't think this affects the merits of the case but it is a shot gun way of going about it that we are objecting to. We simply say there was misjoinder of parties because one party could have no charge or power over the funds because of court order." This scarcely rises to the dignity of an argument, and we will dismiss the subject with the statement that each of the parties was a proper, if not a necessary, party, and the court properly so held.

Under the averments of the petition, there can be no question but that the alleged deposit made by the petitioner was a special deposit, and, under the facts averred, taken as true, as we must upon demurrer, the title to the $2,000 in gold coin remained in said H. C. Smith. The relation of bailor and bailee, and not that of creditor and debtor was created thereby. Alston v. State, 92 Ala. 124, 9 So. 732, 13 L. R. A. 659; Boyden v. Bank of Cape Fear, 65 N. C. 13; Dawson v. Real Estate Bank, 5 Ark. 297; Lowry v. Polk County, 51 Iowa, 50, 49 N. W. 1049, 33 Am. Rep. 114; 2 Am. & Eng. Ency. of Law, 93; 1 Morse on Banking, § 183 et seq.; 3 R. C. L. 519, § 148; Fogg v. Tyler, 109 Me. 109, 82 A. 1008, 39 L. R. A. (N. S.) 847, Ann. Cas. 1913E,

41; Michie on Banks and Banking, 626, c. 9, § 328; First Nat. Bank of Decatur v. Henry, 159 Ala. 367, 49 So. 97.

The defendants answered the petition, in which they denied that the money was deposited with the Central Bank & Trust Company for safe-keeping; averring in substance and effect that the deposit was not a special deposit, but a time deposit, bearing interest at 4 per cent. per annum; that the deposit was in fact made *some years prior to the 26th day of December, 1930;* that sundry certificates, representing the deposits, were issued from time to time to said Smith, evidencing the then amount on deposit with the defendant bank; that each of said certificates contained the stipulations "payable to the order of himself (in gold same as deposited) or to Dora Smith, on return of this certificate properly indorsed three months after date, interest at four per cent. if left three months. No interest for fractional part of month." These certificates were signed for the bank by O. F. Cobb, cashier.

Continuing, the defendants say in their answer: "These defendants admit that the $2,000.00 was in gold and was in a package and that the same remained in the bank intact. But these defendants allege that when the bank gave an interest bearing certificate therefor that the same was placed upon the books of the bank as a liability of the bank, and that said amount was added to the cash as assets of the bank. These defendants further say that the amount of money represented in the several certificates set out hereinabove was at all times carried in the cash account as assets of the bank and the corresponding amount carried as liability on the books of the bank. They further aver that said money was at all times held in the vault of the bank and admit it was never loaned out or used in the sense of paying obligations or used in any other manner than to add to the amount of cash actually on hand and was counted as such in the reserve that was always held intact. These defendants admit that under the terms of the certificate that the complainant was to have payments in gold same as deposited and as a matter of fact the said gold was not used or exchanged for other gold coin, but was intact *as* (and) counted as a part of the legal reserve as above set forth.

"Defendants aver that each time when the said complainant came to the bank and indorsed the certificate he was paid his interest or the same was counted in a new certificate or he was paid his interest and part of the money was taken out and a new certificate for the balance was issued."

If the deposit was a general deposit, or a time deposit, bearing interest, the petitioner is not in this proceeding entitled to recover the gold coin in question, but must come in

and share ratably with the other unsecured creditors of the bank.

■ If, however, the deposit was a special deposit of the gold for safe-keeping, the title to the gold coin never passed out of the petitioner, but remained in him, and he would, ordinarily, be entitled to recover the same, but a court of equity, in the event he has been paid interest on the special deposit, which, by reason of the deposit being a special one, and not a general deposit, he was not entitled to, would decree, as a condition precedent to the recovery of the special deposit, that he return the interest paid, or submit to a reduction of the special deposit by the amount of the interest improvidently paid him. For, of course, if the money was deposited for safe-keeping only, the bailee in such a case would be under no duty or obligation whatever to pay interest on the deposit. The payment would be wholly gratuitous, and without consideration, and an imposition and wrong perpetrated upon the stockholders of the bank. Such a depositor, asking and demanding the delivery of the money, upon the theory that it was a special deposit, cannot, as against the bank or its stockholders, retain amounts paid him as interest. It would be unjust and inequitable. The payment of interest is wholly inconsistent with the theory of a special deposit, such as the petitioner in his petition avers the deposit in question was. A court of equity, in the event that interest has been improperly paid to and received by the petitioner on the deposit, would require the petitioner to do equity, which would be either to return the interest improperly or improvidently paid him, or consent that the amount of the special deposit be reduced by the aggregate amount of interest paid him by the bank on the special deposit. This the court of equity would do on the equitable principle that "he who seeks equity must do equity." Grayson v. Goolsby et al., 224 Ala. 75, 139 So. 106; Interstate Trust & B. Co. v. National Stockyards Nat. Bank, 200 Ala. 424, 76 So. 356; Davis v. Elba Bank & Trust Co., 216 Ala. 632, 114 So. 211; Cross v. Bank of Ensley, 203 Ala. 561, 84 So. 267; Grider v. American Freehold L. M. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58.

Again, however, if the deposit, as originally made, was a special deposit of the gold coin for safe-keeping, but thereafter, by the dealings between the depositor and bank, the deposit was converted into a time deposit, bearing interest, the petitioner, of course, would not be entitled to recover the gold, but must come in and share ratably with the general creditors of the estate. This right he may claim as a result of the amendment (5) to the Constitution repealing section 250, article 13, of that instrument.

The evidence in this case has been carefully examined and considered by the court.

There is no doubt in our minds but that in the year 1921 the petitioner owned gold money to the amount of something like sixty-four or sixty-five hundred dollars. According to the petitioner's testimony, this money was deposited with the Central Bank & Trust Company some years before the bank went into the hands of the superintendent of banks for liquidation. He testified that he put it in the bank for safe-keeping, to be his property, to get it when he wanted it; that it was counted and put in a coin bag, and then it was put in the vault, with his name on the bag; that the understanding and agreement he had with the officials of the bank, at the time he left his money with the bank, was that the money was to be "mine and I was to go there and get it when I wanted it."

The evidence shows without dispute that this money was deposited with the bank in 1921, and that at the time it was deposited a certificate of deposit was made out and given to Mr. Smith. This certificate of deposit recited that H. C. Smith had deposited in this bank a designated amount of money, payable to the order of himself (in gold same as deposit) or to Dora Smith "on return of this certificate properly indorsed three months after date. Interest at four per cent. if left three months. No interest for fractional part of month." The testimony further shows without dispute that each year, covering a period of about nine years, Mr. Smith was paid interest on the deposit. It further shows without dispute that Mr. Smith, during the eight or nine years that he kept this deposit with the Central Bank & Trust Company, made many withdrawals from the fund, and each time that he withdrew money it was paid to him in gold out of the sack or bag that he originally placed the money in, and that it was some of the same money placed with the bank. It further shows, without dispute, that each time that money was withdrawn Mr. Smith returned and indorsed the old certificate, and a new certificate, similar to the first certificate, was given him, only varying in amount. The testimony further shows, without dispute, that the Central Bank & Trust Company carried the money represented by the several certificates in the cash account as assets of the bank, and that, while the money was at all times held in the vault of the bank, and was never loaned out or used in the sense of paying obligations, it was used in adding to the amount of cash actually on hand, and was counted as such in the reserve that was kept by the bank to meet requirements of the banking law. It further appears that, on periodical examinations of the bank by the banking department, this money was actually counted by the examiners, and the bank given credit therefor as so much cash on hand.

Inasmuch as the obligation of the bank to Mr. Smith to pay him in gold, same as deposited, and inasmuch as the law required

that the bank should keep at all times a certain per cent. of its deposits on hand, it was, of course, just as convenient to keep this gold intact as part of its legal reserve as to keep other money. A twofold purpose was accomplished thereby.

The fact that each time a withdrawal of a part of his deposit was made by Mr. Smith he was required to indorse and surrender the old certificate, and a new time certificate, bearing interest, was given him, is quite persuasive of the fact that the deposit was a time deposit, bearing interest, and not a special deposit. On redirect examination of Mr. Smith, by his attorney, the following questions were asked him:

"About the payment of interest to you. When you put the gold in there, did you ever at any time ask the bank, or demand of the bank the interest? Ans. Oh no. They just volunteered to give me the interest on it. They gave me the interest.

"Did you ask for any interest when you put the money there? Ans. There wasn't nothing said about it that I remember. Mr. Cobb wrote me, it had been there about a year or a little more, and he wrote in a letter and told me to come up there and get the interest on it.

"But the gold had been in there about a year and he wrote you to come and get the interest on it? Ans. Wrote me a letter.

"Did you ever make any demand for interest on it? Ans. No."

On cross-examination by the defendants Mr. Smith testified in answer to questions by defendants:

"The certificate and the contract show it was payable to you and payable in gold? Ans. Yes, sir.

"And bearing four per cent. interest? Ans. Yes, sir.

"All the interest that was ever paid you Mr. Cobb volunteered to give you the interest? Ans. Yes. Of course, if he wanted to volunteer to give it to me I would take it. If it was worth that to him it would suit me."

It also appears from the evidence that on the 31st day of December, 1930, $500 was withdrawn from the deposit, thereby leaving the original deposit $2,000, and on that day a certificate of deposit in words as follows was issued by the bank to cover this balance:

"Not subject to check.
"Central Bank & Trust Company, No. 9503.
    "Jasper, Ala. 12/31/30. $2,000.00.
"H. C. Smith Has deposited in this Bank $2,000.00 Dollars Payable to the order of H. C. or Dora Smith (in gold same as deposited) on the return of this certificate properly indorsed ———— months after date.

"Interest at 4 per cent. if left 3 months.
"No interest for fractional part of month.
"Int. from Dec. 26, 1930.
        "[Signed] Schley O'Rear,
                "Asst. Cashier."
Marked on margin: "Certificate of Deposit."

■ A certificate of deposit is defined to be a written acknowledgment by a bank of the receipt of a sum of money on deposit which it promises to pay to the depositor, to his order, or to some other person or his order, whereby the relation of debtor and creditor between the bank and the depositor is created. 5 Michie on Banks and Banking, 598; Maryland Finance Corp. v. People's Bank, 99 W. Va. 230, 128 S. E. 294. And a certificate of deposit, being an instrument in writing evidencing a transaction between the parties, must be considered in the light of the same rules of law as other written instruments. 5 Michie on Banks and Banking, 606; Verdi v. Helper State Bank, 57 Utah, 502, 196 P. 225, 15 A. L. R. 641 note.

The bank ceased to do business on October 29, 1931.

As above pointed out, during each year, from 1921 to 1930, inclusive, the bank paid to Mr. Smith 4 per cent. interest per annum on the amount of this deposit. Interest on the $2,000 was not paid, we are forced to conclude, only because the bank ceased to function before the year expired. From the petition it would appear: (a) That the deposit was first made on December 26 (31), 1930, which was, to say the least of it, misleading. It was made nearly ten years prior thereto.; and (b) that no interest was paid on it, which is true, but the time for the payment of interest did not arrive before the closing of the bank; and (c) that no interest was to be paid on the $2,000, which is not a fact, as is fully disclosed, (1) by the previous uniform dealing between the petitioner and the bank, and (2) by the certificate of deposit issued to petitioner on December 31, 1930, and introduced in evidence by the petitioner at the hearing.

■■ Our conclusion is that it was the original intention of the petitioner to place the money with the bank as a special deposit, but that by the conduct, and the uniform dealing between the bank and this depositor, this deposit was converted and changed into a *time* deposit, bearing interest. This the parties could do, and which they did do according to the evidence in this case. The petitioner will not be allowed to have and receive, *during a period of nearly ten years,* all the benefits of a time deposit, with regular annual payments of interest thereon to him,. and, when the bank, by adversity, is thrown out of commission, to reclaim the fund upon the theory of a special deposit. The law

is administered upon the hypothesis that every man knows the law, and it has not been written into the law, so far as we have been able to find, after diligent investigation, that a deposit may be both a special deposit and a time deposit, bearing interest; and this petitioner must be held to have so known during the time he was drawing interest on his deposit.

We are therefore at the conclusion that petitioner was not entitled to a decree ordering the superintendent of banks to deliver the gold in question to him. Under the evidence in this case, it must be held to be a part of the general assets of the bank, to be administered as such.

The decree of the circuit court will be reversed, and one here entered dismissing the petition, and denying the relief prayed for.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.